BEECHRIDGE DEVELOPMENT COMPANY LLC, Plaintiff v. LAURENCE E. DAHNERS; ELEANOR S. DAHNERS; TERRY R. KITSON; PAULA A. SHERMAN; DAVID B. CRAIG, Trustee; BANCPLUS MORTGAGE CORPORATION; JANE F. BURRILL; JOHN S. BURRILL; TIM, INC., Trustee; NATIONSBANK OF NORTH CAROLINA, N.A.; and ORANGE WATER AND SEWER AUTHORITY; Defendants

No. COA98-348

(Filed 2 February 1999)

1. Easements— subdivision plat—"public easement"—improper use of extrinsic evidence

The trial court erred by using extrinsic evidence to determine the grantor's intent in creating a "public easement" on a recorded subdivision plat without first determining whether this intent could be ascertained from within the four corners of the plat.

2. Easements— subdivision plat—"public easement"—use for sewer line precluded

The term "public easement" on a recorded subdivision plat unambiguously precluded use of the easement for a sanitary sewer line to serve adjacent property where the plat also contained a "sanitary sewer easement" on another portion of the subdivision, since the plat itself indicates that there is a difference between the two types of easements.

Judge Greene dissenting.

Appeal by certain defendants from judgment entered 24 October 1997 by Judge Gordon Battle in Orange County Superior Court. Heard in the Court of Appeals 27 October 1998.

*Northen Blue, LLP, by David M. Rooks, III, for plaintiff-appellee.*

*Beemer, Savery & Hadler, PA, by Mary Elizabeth Jones, for appellants Dahners, Kitson, Sherman, and Burrill.*

LEWIS, Judge.

Plaintiff acquired an undeveloped tract south of the Morgan Creek Hills subdivision in Chapel Hill and wished to use the "public easement" on a portion of the Morgan Creek Hills property for the installation of a sanitary sewer line to service the development of this tract. This "public easement" was denominated as such in a plat

recorded on 7 October 1966 in the Orange County Registry, titled "Final Plat Section One of Morgan Creek Hills Subdivision." The easement was one of two running along the outer edges of the subdivision that were labeled on the plat, the other being a "sanitary sewer easement" on the northern portion of the property.

Plaintiff filed an amended complaint for declaratory judgment on 9 January 1997, seeking "a declaration by the [trial court] that the 'Public Easement' shown on the plat recorded at Plat Book 15, Page 119, Orange County Registry is an offer of dedication of an easement for public use which OWASA [(Orange Water and Sewer Authority)] might accept pursuant to its statutory authority." On 3 September 1997, the trial court ordered the case placed on the trial calendar for the term commencing 20 October 1997. Plaintiff filed a motion for summary judgment on 4 September, with a notice of hearing on the motion set for 20 October. On 20 October, the trial court conducted a non-jury trial with the parties' consent and made findings of fact and conclusions of law in favor of plaintiff. From this judgment, defendants Dahners, Kitson, Sherman, and Burrill appeal.

[1] Among appellants' six arguments, we need address only those regarding the trial court's use of the evidence to determine the scope of the "public easement" on the plat. In making its findings of fact, the trial court relied on the public records in evidence to find that: the preliminary plat submitted to the Town showed a thirty-foot wide storm and sanitary sewer easement which is the subject of this proceeding; the Chapel Hill Board of Aldermen approved the preliminary plat at its meeting of 12 September 1966 with the stipulation that the easement in question also be designated as a public right-of-way; the town manager erroneously notified the developer of the Morgan Creek Hills subdivision that the preliminary plat had been approved with conditions including a requirement that the "[e]asements shown on the plan as storm and sanitary sewer easements should be shown as public easements in accordance with the preliminary plan [sic]"; and, because of this error, the plat that was recorded by the developer described the easement at issue as a public easement and not a storm and sanitary sewer easement with public right-of-way, as the Board of Aldermen actually required. With only the town's records available as evidence at trial and no testimony from the grantor other than the printed plat, the trial court then concluded that "Morgan Creek Hills [sic] Land Company intended the recording of the Plat to be an offer of dedication of the Easement described on the Plat as a public easement for acceptance as a sanitary sewer easement." At no point in its

judgment, however, did the trial court determine whether the term "public easement" was ambiguous. To use extrinsic evidence to determine the grantor's intent without first determining whether this intent could be ascertained from within the four corners of the plat constitutes reversible error, as will be set out below.

Appellants argue that in determining the purpose and extent of an easement, the trial court should be guided by the method provided in our case law:

> First, the scope of an express easement is controlled by the terms of the conveyance if the conveyance is precise as to this issue. Second, if the conveyance speaks to the scope of the easement in less than precise terms (i.e., it is ambiguous), the scope may be determined by reference to the attendant circumstances, the situation of the parties, and by the acts of the parties in the use of the easement immediately following the grant. Third, if the conveyance is silent as to the scope of the easement, extrinsic evidence is inadmissible as to the scope or extent of the easement. However, in this latter situation, a reasonable use is implied.

*Swaim v. Simpson*, 120 N.C. App. 863, 864, 463 S.E.2d 785, 786-87 (1995) (quoting I Patrick K. Hetrick & James B. McLaughlin, Jr., *Webster's Real Estate Law in North Carolina*, § 15-21 (4th ed. 1994)), *aff'd per curiam*, 343 N.C. 298, 469 S.E.2d 553 (1996). We agree with appellants and their assertion that the trial court did not properly follow these steps.

**[2]** In this action, the trial court proceeded to the second step of the analysis above and considered attendant circumstances without first determining if the conveyance itself, the plat, was precise in its terms. "When the language . . . is clear and unambiguous, effect must be given to its terms, and the court, under the guise of constructions, cannot reject what the parties inserted or insert what the parties elected to omit." *Weyerhaeuser Co. v. Light Co.*, 257 N.C. 717, 719, 127 S.E.2d 539, 541 (1962). Here, the language of the final plat clearly and unambiguously indicated that the Morgan Creek Land Company wished to create a "sanitary sewer easement" on the northern portion of the subdivision and a "public easement" on the southern side of the property. Had the developer's chosen terms been "less than precise," the court could have considered attendant circumstances, as well as the manner in which the easement has been used since the time of its dedication. *Swaim*, 120 N.C. App. at 864, 463 S.E.2d at 786. Even then, it would seem difficult to ascertain the grantor's intent in creating the

"public easement" by examining only the town's requests to the grantor and ignoring the plain language of what the grantor provided and the town approved in return. The plat and the dedication therein were recorded in 1966 and apparently have since been unchallenged until now.

Plaintiff cited no cases or statutes and presented no evidence at trial or on appeal to indicate that, from a legal perspective, the phrase "public easement" is so ambiguous as to require judicial interpretation. Plaintiff did not argue that a private developer's use of a public easement to service an adjacent subdivision is an appropriate public use of such an easement. At no point during the trial or appeal did plaintiff present a theory under N.C. Gen. Stat. § 136-96 (1993) that it has a right to at least part of the easement as the owner of adjacent land because the easement was not "actually opened and used by the public within 15 years from and after the dedication," and was created by a corporation which is no longer in existence. Essentially, its only argument was that an error occurred behind the scenes, and that an examination of evidence other than the plat itself will explain why this public easement is in fact a sanitary sewer easement.

Plaintiff cites this Court's decision in *Sampson v. City of Greensboro*, 35 N.C. App. 148, 240 S.E.2d 502 (1978), to support the notion that this "public easement" should be converted into a sanitary sewer easement. In that case, a plat contained a signed certificate stating, "The undersigned hereby acknowledge this plat and allotment to be _____ free act and deed and hereby dedicate to public use as streets, playgrounds, parks, open spaces, and easements forever all areas so shown or indicated on said plat." *Id.* at 149, 240 S.E.2d at 503. The defendant city sought to install a sanitary sewer along the easement, and plaintiffs argued that if the property had been properly dedicated (which they claimed it had not), the easement was intended to be for a storm sewer and not a sanitary sewer. Both the trial court and this Court ruled in defendant's favor.

The facts of *Sampson* clearly are distinguishable from the situation before us now. First, the conversion of a storm sewer easement to a sanitary sewer easement requires a much smaller inferential leap than does the conversion of a public easement to a sanitary sewer easement, as the plaintiff here sought. Furthermore, it is much more difficult for a private developer to argue that he is providing a public use, as permitted by the language of the dedication, than it is for a city or other government entity. "A public use is a use by and for the gov-

ernment and the general public, not for particular individuals or estates." *City of Statesville v. Roth*, 77 N.C. App. 803, 807, 336 S.E.2d 142, 144 (1985). Finally, and of great significance to plaintiff's case here, a Greensboro ordinance cited in *Sampson* at 150, 240 S.E.2d at 503, stated:

> All property shown on the plat as dedicated for a public use shall be deemed to be dedicated for any other public use authorized by the city charter or any general, local, or special law pertaining to the city when such other use is approved by the city council in the public interest.

Plaintiff has made us aware of no ordinance in Chapel Hill that would permit what was clearly dedicated as a public easement to be transformed into a sewer easement to service a private developer's adjacent tract of land.

There is at least one similarity between these facts and those in *Sampson*, and that is the presence of dedicatory language on the plat itself. In this case, the relevant language reads as follows: "Know all men by these presents, that we hereby acknowledge this plat and allotment to be our free act and deed and that we do hereby dedicate to public use as streets and easements forever all areas as shown on said plat." Below this statement appear the signatures of the vice president of, presumably, the developer's company; the town manager; the chairman of the planning board; and the town clerk. It is unclear why the town would express in writing its assent to the plat as drawn and allow the public easement to remain in an incorrect form for over thirty years if it were labeled improperly by the developer.

The plain language of the Morgan Creek Hills plat shows a sanitary sewer easement on the northern portion of the property and a public easement on the southern portion. This indicates that there is a difference between the two types of easements, and because there is such a distinction on the plat itself, there is no reason to consider the term "public easement" as embracing "sanitary sewer easement." As such, there was no ambiguity to warrant the trial court's examination of any extrinsic evidence to determine the grantor's intent. We are not asked, and do not attempt, to specifically enumerate those things that can or cannot go under, through, upon or above a public easement. We limit our holding to the facts before us in this case, where it seems clear from the language of the plat that sanitary sewer lines may be installed on a "sanitary sewer easement" but not for

these purposes on a "public easement." Because we consider this plat to show an unambiguous grant of a public easement on the southern portion of the Morgan Creek Hills subdivision, and because the interpretation of an unambiguous easement is a question of law requiring no examination of extrinsic evidence, *see Leonard v. Pugh*, 86 N.C. App. 207, 210, 356 S.E.2d 812, 814 (1987), we reverse the trial court's holding in favor of plaintiff.

Reversed.

Judge HORTON concurs.

Judge GREENE dissents.

Judge GREENE dissenting.

I respectfully dissent from the majority opinion, because I believe the plat creating the "public easement" at issue in this case is either ambiguous or entirely silent as to the scope of the easement created.

Where an easement has been created by a "perfectly precise" express conveyance, the terms of the conveyance control the scope of the easement. *Williams v. Abernethy*, 102 N.C. App. 462, 464-65, 402 S.E.2d 438, 440 (1991). If the terms of the creating instrument are ambiguous as to the easement's scope, " 'the scope may be determined by reference to the attendant circumstances, the situation of the parties, and by the acts of the parties in the use of the easement immediately following the grant.' " *Swaim v. Simpson*, 120 N.C. App. 863, 864, 463 S.E.2d 785, 786 (1995) (quoting I Patrick K. Hetrick & James B. McLaughlin, Jr., *Webster's Real Estate Law in North Carolina* § 15-21 (4th ed. 1994) [hereinafter *Webster's Real Estate Law*]), *aff'd per curiam*, 343 N.C. 298, 469 S.E.2d 553 (1996).

> [I]f the conveyance is silent as to the scope of the easement, extrinsic evidence is inadmissible as to the scope . . . of the easement. However, in this . . . situation, a reasonable use is implied. The authors assume extrinsic evidence is admissible to determine what is a reasonable use.

I *Webster's Real Estate Law* § 15-21 (citations omitted). Our courts have stated that "reasonable uses" are "to be determined in the light of the situation of the property, . . . the surrounding circumstances, . . . [and] the purposes for which the easement was granted." *Shingleton v. State*, 260 N.C. 451, 457, 133 S.E.2d 183, 187 (1963).

Accordingly, I agree with the authors of *Webster's Real Estate Law* that extrinsic evidence is necessary and admissible for the court's determination of what constitutes a "reasonable use" where the conveyance is silent as to the easement's scope.

In this case, one portion of the plat was labeled "public easement" and another portion was labeled "sanitary sewer easement." As the phrase "public easement" could encompass a variety of public uses, the plat is either ambiguous or "silent as to the easement's scope." In either case, the trial court was within its authority to consider the "surrounding circumstances," including the purpose for which the easement was granted, in determining the "public easement's" scope. Furthermore, I believe the fact that the plat also provided for a separate "sanitary sewer easement" is merely one of the "surrounding circumstances" the trial court had to consider in determining the scope of the "public easement." Accordingly, having found defendants' remaining arguments unpersuasive, I would affirm the trial court.