Wiley Vick **FISHER**, Jr., et al., for themselves and on behalf of all others similarly situated, Plaintiffs,

v.

**VIRGINIA ELECTRIC AND POWER COMPANY** and **Dominion Telecom, Inc.**, Defendants.

No. CIV.A.3:02–CV–431.

United States District Court,
E.D. Virginia.
Richmond Division.

Feb. 4, 2003.

Stephen E. Baril, Esquire, A. Peter Brodell, Esquire, Samuel W. Hixon, III, Esquire, Williams Mullen P.C., Richmond, VA, Nels Ackerson, Esquire, Elaine A. Panagakos, Esquire, Kathleen C. Kaufman, Esquire, The Ackerson Group Chartered, Washington, D.C., Randall B. Pridgen, Esquire, Battle, Winslow, Scott & Riley, P.A., Rocky Mount, NC, for Plaintiffs.

Stephen A. Northup, Esquire, Matthew B. Kirsner, Esquire, Troutman Sanders LLP, Richmond, VA, Charls A. Zdebeski, Esquire, Troutman Sanders LLP, Washington, D.C., Thomas E. Spahn, Esquire, Robert L. Hodges, Esquire, McGuireWoods, LLP, George W. Marget, III, Esquire, John D. Sharer, Esquire, Dominion Resources Services, Inc., Richmond, VA, for Defendants.

## MEMORANDUM OPINION

PAYNE, District Judge.

The named plaintiffs, Wiley Fisher, Jr. and John Fisher, filed a class action complaint against the defendants, Virginia Electric and Power Company ("VEPCO") and its affiliated company, Dominion Telecom, Inc. ("Telecom") (collectively "Defendants"), seeking: (1) a declaratory judgment respecting the meaning of certain grants of easement burdening lands that Plaintiffs own in the Eastern District of North Carolina (Count I); (2) compensatory damages for continuing trespass on that land alleged to be the consequence of the Defendants' conduct in using the easements for purposes that the granting docu-

ments do not permit (Count II); (3) an accounting for, and the disgorgement of, the alleged unjust enrichment which the Defendants have secured by exceeding the easements the scope of the granting documents (Count III).[1] The Plaintiffs are North Carolina citizens. The Defendants are Virginia corporations, each having its principal place of business in Virginia.

Pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6),[2] Defendants filed a Motion to Dismiss on the ground that the Court lacks subject matter jurisdiction under the so-called "local action doctrine." For their part, the Defendants claim that: (1) the local action doctrine is a jurisdictional rule; (2) federal law determines whether an action is a local one; and (3) under federal law, this action is local in nature. The Plaintiffs take the views that: (1) the local action doctrine is a rule of venue, not of jurisdiction; (2) state law determines whether an action is a local one; and (3) under federal law, this action is transitory in nature.[3]

After the Defendants raised their jurisdictional challenge under the local action doctrine, the Plaintiffs moved for leave to amend their complaint to add Harmon and Linda Tomlinson as named plaintiffs. The Tomlinsons are citizens of North Carolina who own Virginia land that the Plaintiffs allege is burdened by easements, the grants of which are substantially similar to those that burden the Fisher's North Carolina land. The Plaintiffs rightly contend that this amendment, if allowed, would obviate the local action dispute. Defendants's sole basis for opposing the proposed amendment is that, because the local action doctrine deprives the Court of subject matter jurisdiction, it lacks jurisdiction to permit an amendment, even if the amendment would cure the jurisdictional defect of which the Defendants complain.

The local action doctrine has been criticized as of doubtful provenance and as irrational. In addition, there is a divergence of authority on nearly every aspect of the doctrine. And, notwithstanding that the American progenitor of the local action doctrine is an ancient decision of the Fourth Circuit, the law of the circuit is not altogether clear respecting either the contours of the doctrine or its reach.

Having surveyed the decisional law in the Supreme Court and within and without the Fourth Circuit, and for the reasons that follow, the Court concludes that, ac-

---

1. The Plaintiffs also seek punitive damages which, of course, is a specie of damage and not an independent claim. It is unclear under which count the punitive damages are sought, but presumably they are fastened to the trespass claim asserted in Count II.

2. The Defendants draw no distinction between a jurisdictional challenge under Rule 12(b)(1) and one made under Rule 12(b)(6). Where the challenge is an attack on the facts supporting jurisdiction, no presumptive truthfulness attaches to the plaintiff's allegation, and disputed material facts will not preclude the trial court from evaluating the merits of the jurisdictional claims. *See Crutchfield v. U.S. Army Corps of Eng'rs*, No. 3:02cv594, 230 F.Supp.2d 687, 695 (E.D.Va.2002), 2002 U.S. Dist. Lexis 21719, at *21–22. Where the challenge is a facial attack on the sufficiency of the pleadings, however, the court must accept the plaintiff's allegations as true. *Id.* Because Defendants assert that the facts alleged in the Complaint render this action local in nature, their challenge is a facial attack, mounted under Rule 12(b)(6), and it is treated as such herein.

3. Both parties agree that, under Virginia law, this action would be transitory. *See Defendant's Reply Brief In Support Of Motion To Dismiss* at 11 ("plaintiff's action is considered ... transitory under Virginia law."). The parties disagree over how North Carolina would characterize this action. As will be seen, it is unnecessary to resolve the dispute over North Carolina law because, in this Circuit, federal law determines the character of actions in federal court.

cording to the law of this circuit, the determination whether an action is local or transitory in nature is exclusively a question of federal law and that, under federal law, this action is transitory. Because this action is transitory, the local action doctrine does not deprive the Court of subject matter jurisdiction. However, even if this action were local in nature, the Defendants's objection to the Motion for Leave to Amend must be denied because the local action doctrine addresses itself to venue and, hence, cannot deprive a court of jurisdiction to allow an amendment.[4]

## BACKGROUND

The Plaintiffs seek to represent a class consisting of all owners of North Carolina and Virginia land (other than public streets or highways) that: (1) underlies VEPCO's electric transmission lines; and (2) is burdened by limited electricity transmission easements granted to VEPCO. The Plaintiffs assert that VEPCO may use the easements only to transmit electric power or for associated purposes and that VEPCO cannot use them, or permit their use, for any other purpose.

One of the apparently typical easement agreements, executed by a predecessor in interest of one of the named plaintiffs, is attached as an exhibit to the Complaint. It confers upon VEPCO:

an easement of right of way ... to construct, operate, and maintain one or more pole and/or tower lines, as [VEPCO] may from time to time deem expedient and advisable, and one telephone line for the purpose of transmitting power by electricity and supporting

telephone wires including all electric power, telephone, telegraph and other wires, poles, towers, attachments, ground connections, equipment and accessories desirable in connection therewith ....

Complaint, Ex. A. The lands over and across which the easement is granted, and "the course located and marked out for the construction, operation and maintenance of said tower and pole line" are shown on an attachment that is incorporated into the easement. *Id.*[5] The Plaintiffs allege that Defendants, acting without Plaintiffs's consent and without paying consideration, have installed, and are operating, within the easement, fiber-optic cable for a commercial purpose unrelated to electricity transmission. According to the Plaintiffs, these activities exceed the limited scope of VEPCO's easements and, therefore, constitute a continuing trespass. The Plaintiffs also contend that Defendants have been, and will continue to be, unjustly enriched by profits resulting from the installation, operation, and maintenance of the fiber-optic cable within the easement. The Plaintiffs, therefore, request a declaratory judgment that the text of the documents granting the easements does not permit the Defendants to use, or to permit the use, of the easements for the challenged purpose. The Plaintiffs also seek relief in the form of damages for the continuing trespass, restitution for Defendants's unjust enrichment, punitive damages, and an injunction preventing Defendants from operating and maintaining the offending fiber-optic network.

---

4. If this action were local in nature, the Amended Complaint would cause this action to fall into the gap within the federal venue provisions described in *Raphael J. Musicus, Inc. v. Safeway Stores, Inc.*, 743 F.2d 503, 506 n. 3 (7th Cir.1984). The decisions reached in this opinion, however, make it unnecessary to address that issue.

5. The exhibit—asserted to be a standard form prepared by VEPCO—bears the caption "Virginia Electric & Power Company—North Carolina—Standard Easement Form No. 3a—Individual—Transmission Line—4–10–26—40013."

## DISCUSSION

In perspective of this background, the challenge to subject matter jurisdiction here necessitates: (i) a brief explication of the local action doctrine; (ii) a determination whether state or federal law controls ascertainment of the nature of an action as local or transitory; and (iii) application of the controlling principles to the factual assertions presented in the Complaint. Finally, the Plaintiffs's motion for leave to file an amended complaint, and the Defendants's opposition thereto, require ascertaining whether the local action doctrine is a rule of jurisdiction or of venue. These questions now will be addressed *seriatim*.

### I. The Local Action Doctrine

At common law, there was a distinction between so-called "local actions" and "transitory actions." 17 James Wm. Moore *et al.*, Moore's Federal Practice, § 110.20 (3d ed.2002). The historical justifications for the distinction have little import today, but, where real property is involved in an action, it is generally said that "[t]he traditional distinction [between local and transitory actions] is the same as the traditional division between *in personam* and *in rem* jurisdiction. The reason for this parallel is that, in order to provide *in rem* relief, the court must have jurisdiction over the real property at issue, and a local action must therefore be brought in a jurisdiction in which the real property is located." *Id.*

Of course, there are many actions which involve, and thus affect, real estate. And, the law is settled that not all such actions are local. Indeed, "most types of actions are considered transitory even though the outcome of the litigation may affect property." 17 Moore's § 110.20[2]. And, if an action is transitory, the courts have subject matter jurisdiction to entertain it if there is otherwise a basis for subject matter jurisdiction, *e.g.*, diversity of citizenship, and if the court has *in personam* jurisdiction over the defendant so that any relief granted to the plaintiff may be enforced against the defendant. According to a leading treatise, the distinction is that:

If the plaintiff seeks a remedy that requires the court to have jurisdiction over real property to afford the relief sought, the action is *in rem* and local. The action is transitory, even though it may affect land, if the type of relief requested is personal in nature so that the court acts on the defendant's person or personal property, which is within its control, and not directly on the lands involved.

17 Moore's § 110.20[2]. As discussed below, this rather straight forward approach to characterizing an action as local or transitory was complicated by the decision in *Livingston v. Jefferson*, 15 F.Cas. 660, No. 8,411 (C.C.D.Va.1811),[6] which held that an action for trespass quare clausum fregit (q.c.f.) was a local action. The challenge to jurisdiction here is predicated on the decision in *Livingston* and its progeny.

### II. Applicable Law

 Considering that *Livingston* is almost two centuries old, it is remarkable that, in the application of this venerable doctrine, it remains an unsettled question whether federal or state law controls the characterization of an action as local or transitory. *See, e.g., Central Wesleyan College v. W.R. Grace & Co.*, 6 F.3d 177 (4th Cir.1993) (applying both federal and state law); *Musicus*, 743 F.2d at 506 (noting the outstanding dispute in case law,

---

6. *Livingston* was decided by a circuit court comprised of a district judge, Judge Tyler, and Chief Justice John Marshall, sitting as a circuit justice. Both wrote opinions, but the opinion by the Chief Justice is most often cited as the progenitor of the local action doctrine in American jurisprudence.

but declining to address the issue); *Durbin v. National Loan Investors*, 2002 WL 31052430 at *1 n. 3 (N.D.Cal.2002) (same); *Hallaba v. Worldcom Net. Serv's. Inc.*, 196 F.R.D. 630, 646 (N.D.Ok.2000) (applying federal law); *Wheatley v. Phillips*, 228 F.Supp. 439, 441–42 (W.D.N.C.1964) (applying both federal and state law); *Big Robin Farms v. California Spray–Chem. Corp.*, 161 F.Supp. 646, 647–49 (W.D.S.C. 1958) (applying state law). Moreover, a number of the decisions that have applied state law to determine the character of a federal action have taken that course begrudgingly due to the constraints of admittedly erroneous precedent. *See, e.g., Trust Co. Bank v. U.S. Gypsum Co.*, 950 F.2d 1144, 1149 (5th Cir.1992); *Wheatley*, 228 F.Supp. at 441. In any event, as explained below, controlling precedent in this circuit teaches that federal law controls the characterization of an action in federal court, and commentators agree that this is the better view.

## A. The Huntington Fallacy

In *Huntington v. Attrill*, 146 U.S. 657, 13 S.Ct. 224, 36 L.Ed. 1123 (1892), the Supreme Court laid the groundwork for the still-current dispute on the source of controlling law by stating that "whether an action for trespass to land in one state can be brought in another state depends on the view which the latter state takes of the nature of the action." 146 U.S. at 669–70, 13 S.Ct. 224. That statement was dictum because the only issue before the Court in *Huntington* was the meaning of the terms "penal" and "penalty" in the context of the international law doctrine that penal laws of one jurisdiction will not be enforced in a foreign jurisdiction.

The local action doctrine was not necessary to determine that issue. Rather, the Court mentioned the local action doctrine in passing as part of a broad discourse on the issues of comity and the multijurisdictional enforcement of judgments. In expounding on the local action doctrine in that context, the Court relied primarily on a rather obvious misapprehension of the opinion in *Livingston*. Specifically, in *Huntington*, the Court understood Chief Justice Marshall to have applied Virginia law to decide whether the action in *Livingston* was local or transitory, and also understood him to have held that a trespass action was a local action under Virginia law. *Huntington*, 146 U.S. at 669–70, 13 S.Ct. 224. That doctrine in *Huntington* cannot be squared on either count with the decision in *Livingston*, which actually held that the local action doctrine "depends, *exclusively*, on the constitution and laws of the United States," *Livingston*, 15 F. Cas. at 665 (emphasis added), and only noted in passing that, "[i]n the state courts of Virginia, all actions ... of trespass *quare clausum fregit* ... may be prosecuted ... in like manner as transitory actions may be prosecuted therein [by virtue of Virginia statute]." *Livingston*, 15 F. Cas. at 665 n. 5. Nonetheless, courts have often followed *Huntington*'s erroneous dicta respecting the application of state law in characterizing an action under the local action doctrine, even while acknowledging its inaccuracy. *See, e.g., Trust Co. Bank*, 950 F.2d at 1149–50 & n. 10 (5th Cir.1992) (noting the fallacy and that "the use of state law to determine whether a federal court can resolve a local action is difficult to support" but applying state law because bound by precedent); *see also* 17 Moore's § 110.20[4]; 15 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 3822 (2d ed.2002); Note, Local Actions in the Federal Courts, 70 Harv. L.Rev. 708, 710–11 (Feb.1957) (hereinafter, "Local Action Note").

Other decisions of the Supreme Court, both before and after *Huntington*, confirm that the *Huntington* dicta is neither correct nor controlling. For example, the Supreme Court addressed the issue at

least twice before *Huntington,* applying federal law on both occasions. *Northern Indiana R. Co. v. Michigan Cent. R. Co.,* 56 U.S. (15 How.) 233, 14 L.Ed. 674 (1853) (applying federal law but supposing that state law was in accord); *Massie v. Watts,* 10 U.S. (6 Cranch) 148, 3 L.Ed. 181 (1810) (applying federal law in an opinion authored by Chief Justice Marshall). Then, two years after *Huntington,* in *Ellenwood v. Marietta Chair Co.,* 158 U.S. 105, 15 S.Ct. 771, 39 L.Ed. 913 (1895), the Supreme Court held, without indicating that either Ohio or West Virginia law was controlling, that an action for trespass to land in West Virginia could not be maintained in Ohio. *Id.* at 107–08, 15 S.Ct. 771. The Court cited an Ohio case that recognized the local action doctrine, but that citation trailed a string of citations representing a multitude of jurisdictions, including a number of federal cases and two decisions that expressly applied federal law. *Id.* at 108–09, 15 S.Ct. 771 (citing, *inter alia, Livingston, Northern Indiana Railroad,* and *Thayer v. Brooks,* 17 Ohio 489, 492 (1848), which itself cited *Livingston* and concluded that the local action doctrine was "universally recognized as a rule of the common law."). From the context, it is clear that these citations were intended to support the proposition that, under the common law, a trespass on land was a local action. Because the Court never indicated that it was bound to follow Ohio law on the matter, the best reading of *Ellenwood,* particularly in view of *Northern Indiana* and *Massie,* is that, notwithstanding the erroneous dictum in *Huntington,* federal courts must apply the local action doctrine as a matter of federal common law derived from the English common law. *Id.* at 107–08, 15 S.Ct. 771.

## B. Fourth Circuit Precedent

*Livingston,* a Fourth Circuit decision, held that the character of a federal action "depends, exclusively, on the constitution and laws of the United States." *Livingston,* 15 F. Cas. at 665. Although the Plaintiffs acknowledge that *Livingston* applied federal law, they argue that the Fourth Circuit has since overruled *Livingston* on that point, while the Defendants contend that *Livingston* continues to require district courts in this circuit to apply federal law.

Both parties rely on the decision in *Humble Oil & Refining Co. v. Copeland,* 398 F.2d 364 (4th Cir.1968). They disagree, however, on the correct meaning of that decision. The Plaintiffs urge that because, in *Humble Oil,* the Fourth Circuit applied Texas law to determine whether an oil royalty was an interest in real property, the decision overruled *Livingston,* at least *sub silentio.* Apart from the frailty of the theory of *sub silentio* reversal, the relevant issue was which law the Court of Appeals applied in reaching the conclusion that a South Carolina District Court lacked jurisdiction to determine title to real property located in Texas. The Court made no reference to Texas or South Carolina state law in making that determination; rather, it relied solely on the example set by previous decisions of the federal courts. *Id.* at 367–68 & nn. 5–7.

The ambiguity in the application of the local action doctrine arose because, in *Humble Oil,* the Court of Appeals merged local action doctrine principles with the subject matter jurisdiction rule that a local court need not give effect to a foreign court's judgment directly adjudicating title to local realty, even if the foreign court had *in personam* jurisdiction over all parties to the action. *Id.* at 367–68 & nn. 5–7. Under this rule, a federal court lacks subject matter jurisdiction over land located outside the state in which the court sits. *Fall v. Eastin,* 215 U.S. 1, 8–12, 30 S.Ct. 3, 54 L.Ed. 65 (1909) (holding that one state cannot directly decide title to land located

in another state); *Clarke v. Clarke,* 178 U.S. 186, 190, 20 S.Ct. 873, 44 L.Ed. 1028 (1900); 16 Moore's § 108.81[2],[4] (noting also that most situs states give collateral estoppel effect where the forum state had personal jurisdiction over the parties). Notwithstanding the conflation of these precepts, *Humble Oil* stands for the position that federal law determines a federal court's power to adjudge a dispute involving land located in a foreign state.

The parties also take divergent positions on whether, in *Central Wesleyan,* the Fourth Circuit applied federal or state law in finding that the local action doctrine did not bar a nationwide class action concerning asbestos property damage because the claims at issue did not involve title to, or possession of, real property. 6 F.3d at 187. In support of that determination, *Central Wesleyan* relied on a Third Circuit case that applied only federal law in making the "local/transitory" determination. *Id.* (citing *In re School Asbestos Litig.,* 921 F.2d 1310, 1318–19 (3rd Cir.1990)). But, the Court of Appeals also observed that, "even applying South Carolina law," the action was not local in nature. *Id.*

It is apparent, however, from the context in which *Central Wesleyan* applied South Carolina law, that the Court relied solely on federal law in determining the nature of the action and, as had Chief Justice Marshall in *Livingston,* noted merely in passing that applying state law would achieve the same result. Moreover, nothing in *Central Wesleyan* suggests that the court would have felt obligated to deem the action local if South Carolina had so characterized asbestos property damage claims. Thus, the best reading of *Central Wesleyan* is that federal law is controlling.

The Plaintiffs rely heavily on *Big Robin Farms v. California Spray–Chem. Corp.,* 161 F.Supp. 646, *supra,* in which the Western District of South Carolina reviewed a number of cases addressing the local ac-

tion doctrine and ultimately determined that the nature of an action is to be determined according to the law of the forum state. 161 F.Supp. at 648–49. There are several reasons for declining to follow that determination. First, *Big Robin Farms* was decided before the Fourth Circuit's decisions in *Humble Oil* and *Central Wesleyan.* To the extent that *Big Robin Farms* is inconsistent with those decisions, it has no efficacy because, as explained above, *Humble Oil* and *Central Wesleyan* applied federal law to make the "local/transitory" determination. Second, *Big Robin Farms* is based on the dictum in *Huntington,* and other decisions that relied on the same error. *Id.* at 648–49. And, as explained previously, the *Huntington* dicta is not the law in this circuit. Although it is true that, in *Central Wesleyan,* the Fourth Circuit cited *Big Robin Farms* with approval, it is not clear whether the basis for this citation was the district court's decision to apply state law or, instead, the district court's determination that certain actions for damage to land caused by trespass are local in nature. *Central Wesleyan,* 6 F.3d at 187. Given that *Central Wesleyan* actually relied on federal law to decide the local action doctrine issue, the citation appears to pertain to the latter point.

Finally, the decision in *Big Robin Farms* to apply state law was based, at least in part, on the *Erie* doctrine, *id.* at 647–58, which is plainly erroneous. *See, e.g., Trust Co. Bank,* 950 F.2d at 1149 n. 8 ("Because the local action doctrine is a procedural matter, the *Erie* doctrine is inapposite"); *Musicus,* 743 F.2d at 506 n. 2 (criticizing reliance on the *Erie* Doctrine as a rationale for applying state law in determining the nature of an action). Whether the local action doctrine is a matter of venue or jurisdiction, it is clearly procedural and hence the *Erie* doctrine is inapplicable. 17 Moore's § 110.20[4].

The Plaintiffs also cite other district courts within the Fourth Circuit that have applied state law in deciding whether to characterize a federal action as local or transitory. However, like *Big Robin Farms*, those decisions fail to set forth a supportable basis for so doing. For example, in *Wheatley v. Phillips*, 228 F.Supp. 439, *supra*, and in *Potomac Milling & Ice Co. v. Baltimore & O.R. Co.*, 217 F. 665 (D.Md.1914), decided by the Western District of North Carolina and the District of Maryland respectively, the courts followed *Huntington* and misread *Livingston* to have applied state law. *Wheatley*, 228 F.Supp. at 441; *Potomac Milling*, 217 F. at 667. For that reason, and because both decisions preceded *Humble Oil* and *Central Wesleyan*, they are not informative precedent.

It appears then that, even in perspective of the dicta in *Huntington*, the Fourth Circuit is of the opinion that federal law controls the determination whether an action is local or transitory.

## III. Characterization Of This Action As Local Or Transitory

Characterization of an action as local or transitory is appropriately accomplished first by understanding the raison d'etre for the local action doctrine. Then, mindful of the doctrine's purposes, it is necessary to determine the nature of the action, the relief sought in it, and what the court must do to decide the case, grant the requested relief, and enforce its judgment.

### A. The Reasons Underlying The Local Action Doctrine

In the early days of the common law, juries decided cases on the basis of their personal knowledge. For that reason, all actions were local and had to be brought in the locality from which the jurors came. 17 Moore's § 110 App. 104[1]. Later, cases were decided on the basis of witness testimony in open court and "all actions became transitory except those of an *in rem* character." *Id.* That, then, became a basic precept in English common law "but not to its full extent, since trespass *quare clausum fregit* (q.c.f.) and some other in personam actions, mainly involving realty, continued to be treated as local actions." *Id.*

As Chief Justice Marshall explained in *Livingston*, efforts by English jurists, no lesser than Lord Mansfield, were unable to dislodge this concept from the common law and it became a part of the law of this country. *Livingston*, 15 F. Cas at 664–65. Whatever the reasons were for the doctrine at English common law, in *Livingston*, two justifications were offered for it in actions for trespass q.c.f., both grounded in practicality.

■ In one aspect, the purpose of the local action doctrine is to prevent foreign courts unfamiliar with local property rights and laws from interfering with title to real property. As explained in *Livingston*,

the title and bounds of land may come in question: and who so proper to decide on them as one's neighbors, who are much better acquainted with each other's lines, and everything else which may lead to a fair decision? In any action of this kind [trespass q.c.f.], it may be necessary to direct a survey and lay down the pretensions of both parties; for, the defendant has a right to show in himself, a better title, and defend himself on that title.

15 F. Cas. at 662 (Tyler, Dist.Judge). Therefore, the doctrine appropriately comes into play when determinations within the particular expertise of a situs court may become necessary or when uniquely local evidence or activity is dispositive of a dispute over title to real estate. This may be, for example, where proper adjudication requires a title investigation, where the historical usages of the land are in ques-

tion, or where a survey is required to resolve a boundary dispute. *Northern Indiana Railroad*, 56 U.S. (15 How.) at 244; *Livingston*, 15 F. Cas. at 664.

The more significant jurisprudential aspect of the doctrine is to prevent a court from issuing an extraterritorial judgment that the court has no power to enforce, such as a judgment that would require officers in a foreign jurisdiction to put someone either in or out of possession of land. *Livingston*, 15 F. Cas. at 662; *Lamp v. Irvine*, 41 F.Supp. 684, 686 (D.Md.1941) ("the doctrine is based largely on the ineffective method of relief or enforcing its orders which the Court might have, where the land affected lies in a different district ...."); *see also* Local Action Note, *supra* at 712; 1 Fed. Proc., L.Ed. § 1:705. A court also might find it necessary to use law enforcement officials to effectuate an order involving something less than possession, such as a survey. And, if a court cannot direct the law enforcement officers to effectuate its directives, it can neither secure evidence nor conclude the case. As Judge Tyler explained the matter in *Livingston*,

> it [the direction of the court] must go to an officer to carry his posse to remove force, if any should be offered. And suppose the sheriff and jury should deny the power of the court, could they be coerced?

15 F. Cas. at 662 (Tyler, Dist.Judge). Thus, in such events, the court would be unable to complete what it had begun, and "[t]he law never sanctions a vain thing. How vain, therefore, to begin what we cannot end!" *Id.*

■ "However, that basis for denying jurisdiction does not exist in a case where all that is asked is a personal injunction against defendants who are undoubtedly subject to the process of the Court." *Lamp v. Irvine*, 41 F.Supp. at 686; *Potomac Milling*, 217 F. at 666 (D.Md.1914); *cf. Humble Oil*, 398 F.2d at 367. That conclusion obtains because, although an action on a contract respecting land may present the concerns respecting local expertise outlined above, courts have historically refused to apply the doctrine to land contract cases because the defendant is within the court's power and the court may readily enforce its judgment on the person of the defendant even if the action involves real estate.

■ In sum, it would seem that, if the claim made and the relief sought in the action do not implicate either purpose underlying the local action doctrine, there is neither need nor warrant to apply it. That, indeed, is the unarticulated premise of many decisions which decline to apply the doctrine.

**B. The Distinction Between *In Rem* And *In Personam* Relief**

Some commentators and courts, therefore, have concluded that the true distinction should be made as between actions seeking *in rem* relief, where the judgment cannot be executed unless the thing lies within the reach of the court, and actions seeking *in personam* relief, where the judgment can be effectuated through the court's power over a person within the court's jurisdiction. *See, e.g., Humble Oil*, 398 F.2d at 367–68; *Livingston*, 15 F. Cas. at 664; *Musicus*, 743 F.2d at 506–07; *see also* 17 Moore's § 110.20(1); Local Action Note, *supra* at 711–12. Under that rationale, the local action doctrine is virtually indistinguishable from the limitations that the *Fall–Clarke* rule imposes on a court's jurisdiction and hence the court in *Humble Oil* was correct to conflate the two.[7] *See*

7. The only difference between the two rules perhaps being that the local action doctrine generally operates proscriptively, limiting a court's ability to hear certain actions, whereas the *Fall–Clarke* rule generally operates ret-

*Fall,* 215 U.S. at 11–12, 30 S.Ct. 3 ("where the suit is strictly local, the subject-matter is specific property, and the relief when granted is such that it must act directly upon the subject-matter, and not upon the person of the defendant, the jurisdiction must be exercised in the State where the subject-matter is situated."). Further, if that theory were correct, the local action doctrine would apply only where the nature of the action raises issues respecting the extraterritorial enforcement of judgments.

Notwithstanding that theory's verisimilitude, Chief Justice Marshall noted the theory in *Livingston* and found that precedent demanded its rejection. *Livingston,* 15 F. Cas. at 664. As a result, an action for trespass has become a tralatitious local action in American jurisprudence.

The *Livingston* rule has been questioned since its inception and its continued applicability has been disputed. *See, e.g., Musicus,* 743 F.2d at 510 & n. 5 (questioning the *Livingston* rule and collecting cases that both question and reject it); *Trust Co. Bank,* 950 F.2d at 1148–49 (questioning the local action doctrine and collecting cases rejecting it); *Pasos v. Pan American Airways,* 229 F.2d 271, 272 (2nd Cir.1956) (applying the *Livingston* rule and its concomitant trespass exception "with much doubt" and looking forward, unavailingly, to Supreme Court review and reversal); *Hallaba,* 196 F.R.D. at 647 (following the *Livingston* rule but collecting cases questioning the rule); *cf. Central Wesleyan,* 6 F.3d at 187 (finding an asbestos property damage suit transitory although the damage could only have occurred where the property was located); *Restatement* (Second) of Conflict of Laws § 37 (1971) ("A State may entertain an action that seeks to recover compensation for a trespass upon or harm done to land in another state.").[8] In this circuit, however, the task is not to determine whether or how to reject *Livingston* but to ascertain how to apply it.

## C. The Transactions On Which The Action Is Based

■ To that end, *Livingston* teaches that the determining factor in classifying an action as local or transitory is the transaction on which the action is based. Specifically, as Chief Justice Marshall put it, "[t]he distinction taken is, that actions are deemed transitory, where transactions on which they are founded, might have taken place anywhere; but are local where their cause is in its nature necessarily local." *Livingston,* 15 F.Cas. at 664.[9]

■ The task, then, is to ascertain the transaction which the court must appraise to decide the case. Here, the transaction on which this action is founded is the execution of the deed of easement, for it is that transaction which forever delineated the purpose for which the easement was made available. It is tempting to say that the transaction on which the trespass is founded is the allegedly unlawful use of the easement, but that is circular because if the grant of easement allows such a use,

---

rospectively, allowing a local court to refuse to give effect to a foreign judgment.

**8.** The Restatement distinguishes "trespass to try title," the name several states give to an action for the recovery of possession of land together with damages for any trespass committed upon the same. "Such an action will lie only in the state where the land is since one of its objectives is that the defendant be removed from the land and the plaintiff placed in possession." Rest. (Second) of Conflict of Laws § 88 cmt. d. This is not such a case because the Plaintiffs have not requested that the Defendants remove the fiber-optic cable.

**9.** The opinion proceeds thereafter to establish the provenance of the distinction as well as its continued validity. *Id.*

there is no trespass. When the easement language is addressed first, however, the rest of the case falls into line as a matter of course.

The instruction of *Livingston* finds contemporary manifestation in *Musicus,* a most thorough and thoughtful examination of the parameters of the local action doctrine and the theoretical undergirding of the precepts at issue in resolving the Motion to Dismiss this action. In *Musicus,* the plaintiff filed an action in the Northern District of Illinois alleging that the defendant had breached lease agreements respecting land in Montana and Nebraska. 743 F.2d at 505. Musicus alleged claims for breach of contract, fraud, and trespass all based on its interpretation of the lease agreements. *Id.* The district court had dismissed the complaint for improper venue because it concluded that the relief Musicus sought was essentially to recover possession of the properties, an action that the district court determined was local under Illinois law. *Id.* On appeal, the Seventh Circuit reversed, finding that the local action doctrine was inapplicable largely because "the damages sought for alleged trespass depend entirely on the determination of the parties' respective rights under the leases and the renewal options." *Id.* The court's reasoning in *Musicus* is instructive here.

First, the Seventh Circuit looked carefully at the transaction on which the action was founded and concluded that lease formation was the primary transaction at issue and that the matter of trespass was secondary to the attendant contract construction controversy. *Musicus,* 743 F.2d at 505, 509, 511 n. 6 Hence, the court declined to apply the local action doctrine, notwithstanding the presence of the trespass claim.

Other courts have ascertained the transaction on which the action is founded by looking at the "nature" of the action in light of the primary, or principal, dispute between the parties. *See Bigio v. Coca–Cola Co.,* 239 F.3d 440 (2nd Cir.2000) (describing the *Livingston* rule as a "relic of English common law" and refusing to apply the rule where the trespass claim logically followed from and depended on the non-local claim at the heart of the action). Support for this mode of analysis is found in *Ellenwood* where the Supreme Court held that the action was local because the "allegation was of a single cause of action, in which the trespass upon the land was the ***principal thing, and the conversion of the timber was incidental only, and could not, therefore, be maintained by proof of the conversion of personal property without also proving the trespass upon real estate.*" *Ellenwood,* 158 U.S. at 108, 15 S.Ct. 771 (emphasis added). Other Supreme Court decisions are in accord. In *Massie v. Watts,* 10 U.S. (6 Cranch) 148, 3 L.Ed. 181, *supra,* Chief Justice Marshall, writing for the Court, explained that the proper inquiry is whether the action concerns an "unmixed" question of title and the mere circumstance that a question of title was involved was not alone sufficient to end the analysis. 10 U.S. (6 Cranch) at 158–59. In *Northern Indiana Railroad,* the Supreme Court found the action to be a local one because "locality was connected with every claim set up by the complainants, and with every wrong charged against the defendants." 56 U.S. (15 How.) at 244.

Here, construction of the easement grants is the primary issue, the principal thing. The Plaintiffs's trespass claim is either tenable, or not, depending on how one construes the instruments that control what can be done in the area ceded by the deed of easement. The unjust enrichment claim is equally incidental to the determination of the contract terms that lie at the core of the dispute between the parties.

Defendants argue that, if every action involving property could be construed as an issue of interpreting the conveyance as a matter of contract construction, there would be no local action doctrine. That argument, however, overlooks that, in addition to deed interpretation, many actions involving title to property necessitate surveys, tract history investigations and other miscellany peculiar to the locality, and that the local action doctrine serves its purpose in such actions and thus will remain applicable in them.

This action, however, does not present such a circumstance. Indeed, construing the easement grants is the principal judicial act necessary to resolve the liability issue in this action and no one has even suggested that construing the easement language will present issues within the particular purview of a situs court.

It is true that, in order to give effect to the trespass exception, a court must characterize an action as local where the trespass is the principal thing, i.e., where the entire relationship between the parties arises from the act allegedly constituting the trespass rather than from an express agreement between them. That likely would have been the case, for example, if VEPCO had installed, or allowed installation of, fiber-optic cable over the subject land without ever having purchased an easement, or if VEPCO had installed, or allowed installation of, the cable on land outside the physical boundaries of the existing easements. That the Plaintiffs would have to prove ownership of the land so invaded would not deprive the action of its local character because the principal concern in such an action would be the events constituting the trespass, to wit, the placement of the cable.

In the first example, a document construction would not alone resolve the controversy. In the latter, construction of the easements, in the first instance, would not resolve the matter because one would still have to determine, by land survey or otherwise, whether the fiber was outside the physical boundaries as construed. Here, the language of the easement agreements alone will determine the respective rights of the parties and will dictate the resolution of each and every claim in the Plaintiffs's complaint.

Second, the court in *Musicus* considered that relief on account of trespass was not the only claim asserted in the complaint. 743 F.2d at 505. The Seventh Circuit ruled that the claim for damages due to trespass was secondary to the contract claims and hence was not sufficient to render the entire action local. Here, the primary relief sought is a declaration that terms in the easement grants limit the permissible purposes for which the Defendants may use the easements. The prayer for damages under the trespass claim, and the prayer for an accounting under the unjust enrichment claim, are secondary to, indeed, entirely dependent upon, securing that primary relief.

Defendants contend that the claim for declaratory judgment cannot render this action transitory because the Fourth Circuit has held that "[t]he federal Declaratory Judgment Act is not one which adds to the jurisdiction of the court, but is a procedural statute which provides an additional remedy for use in those cases and controversies of which the federal courts already have jurisdiction." *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321 (4th Cir.1937); *see also Interstate Petroleum Corp. v. Morgan*, 249 F.3d 215, 221 n. 7 (4th Cir.2001). *Quarles* does not apply here because the Plaintiffs premise jurisdiction on diversity of citizenship under 28 U.S.C. § 1332(a), not on the declaratory judgment statute. Therefore, the point of analysis is not whether the declaratory judgment claim is an effort to confer jurisdiction on the

court. Rather, the issue is whether the character of the action is such that the local action doctrine precludes the Court from taking cognizance of an action over which it would otherwise have jurisdiction.[10]

■ Finally, the Seventh Circuit found that it could not ignore the criticisms against the trespass exception, especially those levied by Chief Justice Marshall in *Livingston. Musicus,* 743 F.2d at 509–10 (noting Justice Marshall's criticism's and collecting cases that criticize and reject the *Livingston* rule). Of course, unlike the Court of Appeals for the Seventh Circuit, district courts in the Fourth Circuit may not disregard the decision in *Livingston.* Although the *en banc* Fourth Circuit has not been called upon to review the trespass exception since *Livingston,*[11] precedent does indicate that it is entirely proper for a district court to apply *Livingston* narrowly and, as a result, to adjudicate a controversy in circumstances such as those presented here.

That much appears from the decision in *Humble Oil,* wherein the Fourth Circuit recognized that it is appropriate to issue an *in personam* decree affecting extraterritorial real estate where the relationship between the litigants is such as to give rise to a transitory cause of action. 398 F.2d at 367 (noting that the most frequent examples are actions involving contracts, mortgages and leases). Of course, in *Humble Oil,* unlike here, the Court of Appeals found no relationship between the parties that determined the rights in or ownership of the realty. *Id.* at 367–68. Here, however, the agreements creating the easements set forth the entire relationship between the parties and easement interpretation will completely resolve the controversy. *Cf., id.* (refusing to treat the matter as transitory because interpretation of the leases in issue would not resolve the controversy). Thus, under *Humble Oil,* the Court, having both personal and subject matter jurisdiction, may decide this controversy "even if its decree affects the title to land in another state." *Id.* at 367.

Defendants, certainly not unreasonably, draw parallels to the Northern District of Oklahoma's decision in *Hallaba v. Worldcom Network Services, Inc.,* 196 F.R.D. 630, *supra,* where the plaintiffs, owners of land subject to railroad rights of way, asserted claims for continuing trespass, unjust enrichment, and fraud arising out of fiber-optic cable installations that allegedly went beyond the scope of the railroads' rights of way. *Hallaba,* 196 F.R.D. at 634. The similarities to this action are readily apparent. The *Hallaba* court ultimately determined that, under federal law, an action for trespass is local and thus the

---

**10.** In any event, because the Court finds that the local action doctrine is a question of venue, not jurisdiction, *see* Part IV, *infra,* the Court would not enlarge its jurisdiction by finding that the Plaintiffs's claim for a declaratory judgment renders this action transitory. By way of illustration, if the named Plaintiffs, in complete diversity from the Defendants, had sought a declaratory judgment only, absent any claim of trespass, the action would present the same threshold question of easement construction currently at issue, fully dispositive of the entire matter, and yet the local action doctrine would be plainly inapposite. *Cf. Purcell v. Summers,* 126 F.2d 390 (4th

Cir.1942) (finding that a declaratory judgment is in no sense an action *in rem* even though rights of property may be dependant thereon). It is the nature of the action, the fundamental question for litigation, that is under examination, not the technical language of the Plaintiffs's prayer for relief.

**11.** Only an *en banc* decision of the Court of Appeals can overrule a decision issued by a panel of the Court. Whether a case such as *Livingston,* decided under a court structure different than that which obtains today, qualifies as a panel decision is a matter for the Court of Appeals, not for this Court.

plaintiff's claims were essentially local in nature.[12] *Id.* at 647.

The *Hallaba* court, however, did not disagree with the conclusions reached in *Musicus;* rather, it found that, unlike the claims in *Musicus,* the trespass and land ownership issues were "at the heart" of all of Hallaba's claims. *Id.* at 647. Indeed, the court found that Hallaba's action was "just the opposite" of *Musicus* because Hallaba's "primary claim is one for trespass—that is, a claim that Defendants installed fiber-optic cable on his land without his permission ... [T]he parties ownership interests in the land are essential elements" whereas in *Musicus,* the construction of the lease provisions was alone sufficient to determine the trespass issue. *Hallaba,* 196 F.R.D. at 647.

*Hallaba,* although quite logical and persuasive on its facts, is not applicable here for several reasons. First, the railroad rights of way at issue in *Hallaba* are not legally, or analytically, equivalent to the easements on which this action turns. To the contrary, in *Hallaba,* a central part of the plaintiff's case was whether the cables were installed within, or without, the boundaries of the rights of way. That determination required an inherently factual inquiry into both the deeds and the surrounding circumstances of the rights of way because it was possible that a number of the deeds purporting to grant a "right of way" were instead creating a fee. *Id.* at 637–38, 640 ("The heart of Plaintiff's case involves a determination of the land ownership interest of each class member. This is an inherently factual inquiry that

requires careful review of not only the deed, but also, in many instances, the surrounding circumstances."). No such issues arise in the present action. Indeed, the Defendants have raised no challenge to the Plaintiffs's title and the parties question not the easements's existence, but what activity, under the grant of easement, the Defendants may conduct within the area that the easement describes. In *Hallaba,* the issue respecting easement scope was whether the offending fiber-optic cable fell within the rights of way of the various easements. Thus, the court there was not faced with the situation presented here, *i.e.,* the situation where: (a) a naked question of construction is determinative; (b) each of the grants contains substantially the same language; and (c) the circumstances of any individual easement's creation are largely, if not wholly, irrelevant. Unlike *Hallaba* then, the claims here do not "hinge on [a] dispute over land ownership." *Id.,* 196 F.R.D. at 647. Rather, the claims hinge on construction of a document that, as will be seen, is to be examined under the law of contract construction.

Second, the *Hallaba* court had determined, in its class certification ruling, that the case would require an "individualized process for determining ownership interests" that "would essentially require thousands of mini-trials, applying a variety of state laws."[13] The court then cited *Livingston* for the premise that "the potential for dispute over land ownership is a major reason that courts have characterized tres-

**12.** It is worthwhile to note the procedural posture in which *Hallaba* reached the local action doctrine issue. In a first Memorandum Order, the court had denied plaintiff's motion for class certification. 196 F.R.D. at 644–45. Because the Court had concluded that the case did not meet the class certification requirements, it initially declined to reach the defendant's argument that the local

action doctrine barred class certification. *Id.* Subsequently, Hallaba moved the court to vacate its earlier order pending a decision on subject matter jurisdiction and to expressly decide whether the local action doctrine deprived the court of jurisdiction. *Id.* at 645.

**13.** Of course, only Virginia and North Carolina law are implicated here.

pass actions as local." *Hallaba*, 196 F.R.D. at 647.

It is from this premise that Defendants draw strength for their position that the paradigmatic representation of an easement as "a stick in the bundle of rights" constituting fee ownership is dispositive of their motion. Under Defendants's theory, conveying even a single stick in that bundle is a conveyance of real property, and hence a naked question of title, which requires application of the local action doctrine. That contention finds no support even in *Livingston*.

To begin, as Chief Justice Marshall noted, an action on a contract respecting land, which, of course, could include a land ownership dispute, is transitory. *Livingston*, 15 F.Cas. at 664. And, although a leasehold interest is no less "a stick in the bundle of rights" constituting fee ownership than an easement, the Seventh Circuit saw fit to characterize as transitory an action seeking adjudication of a lease dispute that also asserted a claim for trespass. *Musicus*, 743 F.2d at 509; *cf. Humble Oil*, 398 F.2d at 367 & n. 7 (describing cases involving contracts, mortgages, and leases as exemplary cases where the relationship between the parties gives rise to a transitory cause of action). Thus, the potential for dispute over land ownership is not nearly dispositive of the issue.

Moreover, the distinction to which Chief Justice Marshall adhered in *Livingston*—that actions are deemed transitory where the transaction on which they are founded might have taken place anywhere—does not militate in favor of characterizing an action as local merely because the complaint includes a trespass claim or a dispute over property rights. For if a hypothetical plaintiff were to allege that a defendant breached a contract respecting land in a foreign state and also allege a trespass which depended entirely from that breach, the action would be transitory under the *Livingston* rule because the contract may have been formed anywhere and also transitory under the *Humble–Musicus–Massie* formulation of the doctrine because the contract is the principal thing upon which all other matters in that hypothetical action depend. The same is true here because the agreements creating the subject easements could have been created and executed anywhere, and the language in the agreements is the principal thing upon which all other considerations in this action depend.

■ The foregoing review of historical and contemporary authority reveals that, although the trespass exception, and to a lesser extent the *Livingston* rule, survive in American jurisprudence, courts should narrowly construe them. Thus, it remains true, at least in this circuit, that actions are local when the transaction on which they are founded could only have occurred at the land site. Although a trespass can only have occurred where the land is located, a court should only apply the trespass precept of *Livingston* where the acts constituting the alleged trespass are the principal matters for adjudication. And, there is no warrant to apply the doctrine based solely on a conclusion that an action is generally related to property or its disposition.

■ As a result, this action is transitory in nature because the principal and fundamental question is one of contract construction, not trespass. There is no question that Plaintiffs own the land at issue, and that VEPCO owns easements burdening that land. The central dispute is the rights of the parties according to the agreements creating those easements. Defendants argue that a disagreement over easement scope is, in fact, a title dispute. That may be so, but it is not

sufficient to render the action a local one unless construction of the easement grants would require this Court to make determinations within the particular purview of a court at the locality or would require extraterritorial enforcement of the Court's judgment. What remains then, is to determine whether construction of the easement grants would involve assessments more appropriate to a court of the locality or otherwise require a judgment directly affecting title to real property in North Carolina.[14]

## D. Nature of Easement Construction

■ An easement is a covenant that runs with the land that the easement burdens. The Restatement (Second) of Conflict of Laws § 88 notes that, "at common law, an action between the original parties to a covenant running with the land was considered to be an ordinary contract action and therefore transitory." Restatement (Second) Conflict of Laws § 88 cmt. a. (1971); see also id. § 87 ("A state may entertain an action that seeks to recover compensation for a trespass upon or harm done to land in another state."). According to the Restatement (Third) of Property, "[a] servitude should be interpreted to give effect to the intention of the parties ascertained from the language used in the instrument, or the circumstances surrounding creation of the servitude, and to carry out the purpose for which it was created." Restatement (Third) of Property—Servitudes § 4.1(1) (2000). That is because "[e]xpressly created servitudes are

typically the result of contractual transactions, and the principles set forth in Chapter 9 of the Restatement Second of Contracts should be applied to determine the intent of the parties and the meaning of the terms expressed." Id. cmt. d.

On the other hand, the Restatement advises courts to examine the language in light of the totality of the surrounding circumstances, which includes "the location and character of the properties burdened and benefitted by the servitude, the use made of the properties before and after creation of the servitude, the character of the surrounding area, the existence and contours of any general plan of development for the area, and the consideration paid for the servitude." Id. Those considerations, if applicable in a particular case, would favor application of the local action doctrine.

Moreover, the Restatement is rife with directives that present contradictions when considered in the current context. For example,

Because servitudes are interests in land, subject to the Statute of Frauds and the recording acts, **heavy emphasis is placed on the written expressions** of the parties' intent. The fact that servitudes are intended to bind successors to interests in the land, as well as the **contracting** parties, and are generally intended to last for an indefinite period of time, **lends increased importance to the writing** because it is often the pri-

---

14. It is the accepted law of North Carolina that courts of one state cannot determine title to real property located in another state. *McRary v. McRary*, 228 N.C. 714, 47 S.E.2d 27 (1948); *Buchanan v. Weber*, 152 N.C.App. 180, 567 S.E.2d 413, 415 (2002). But the prohibition is limited to judgments that attempt to dispose of property directly such as where the judgment itself purports to operate as a conveyance. *Buchanan*, 567 S.E.2d at 415–16. An *in personam* order in a Virginia court deciding an issue of title to North Carolina property and indirectly directing the disposition of that property would be given res judicata effect in the latter state. *Lea v. Dudley*, 20 N.C.App. 702, 202 S.E.2d 799, 800 (1974). Thus, an *in personam* judgment directing the conveyance of North Carolina realty is entitled to full faith and credit in that state. *Courtney v. Courtney*, 40 N.C.App. 291, 253 S.E.2d 2, 5 (1979).

mary source of information available to a prospective purchaser of the land.

*Id.* (emphasis added). But "[t]he language should be interpreted to accord with the meaning an ordinary purchaser would ascribe to it *in the context of the parcels of land involved.*" *Id.* (emphasis added). In determining the scope and purpose of the servitude, the primary consideration in the instant case, the Restatement's instructions are particularly troubling:

> The purpose of the servitude can be derived from the language of the instrument used to create the servitude, the relationship between the parcels of land burdened and benefitted, the use made of the servitude, the use made of the benefitted and burdened parcels before and after creation of the servitude, and from *other circumstances surrounding creation of the servitude.* Generally the inferences that ordinary, reasonable purchasers of property benefitted or burdened by the servitude would draw *from the language, used in the context of the particular transaction or the character of the neighborhood,* determine the purpose to be attributed to the creating parties.

*Id.* cmt. i, (entitled "Interpretation to carry out purpose of servitude") (emphasis added). These apparent contradictions notwithstanding, the lead comment to this section is the most instructive: "If the servitude is expressly created, the expressed intentions of the parties are of primary importance." *Id.* cmt. a. On balance, the text of the Restatement (Third) of Property, like the Restatement (Second) of Conflicts of Law, teaches that easement interpretation is, in its essence, a matter of contract construction.

### 1. The Virginia View

According to a leading treatise on Virginia law, where an easement has been granted by deed, the rights of the parties must be ascertained from the words of the deed and the easement's extent "cannot be determined from any other source." 6B Michie's Jurisprudence, Easements § 7 (2002). However, where the language is ambiguous, the court must ascertain the parties's intent by examining the language "in light of the circumstances surrounding the parties and the land, at the time the deed was executed." *Id.* Federal precedent is in accord. *Cnty. of Patrick v. U.S,* 596 F.2d 1186, 1189 (4th Cir.1979); *U.S. v. Parkway Towers, Inc.,* 282 F.Supp. 341, 342–43 (E.D.Va.1968) ("We look first to the language in the instrument for a determination of the rights of the parties, *and the extent of the easement cannot be determined from any other source.* But, if the language is ambiguous, in order to ascertain the intention of the parties, the Court will look to the language in light of the circumstances surrounding the parties and the land at the time the easement is created.") (emphasis added). These are classic precepts for the construction of contracts.

### 2. The North Carolina View

The North Carolina Supreme Court has said that an easement by deed "is of course a contract." *Shingleton v. State,* 260 N.C. 451, 454, 133 S.E.2d 183 (1963). The North Carolina Court of Appeals has adopted the following framework, similar to that of Virginia, for determining the purpose and extent of an easement:

> First, the scope of an express easement is controlled by the terms of the conveyance if the conveyance is precise as to this issue. Second, if the conveyance speaks to the scope of the easement in less than precise terms (i.e., it is ambiguous), the scope may be determined by reference to the attendant circumstances, the situation of the parties, and by the acts of the parties in the use of the easement immediately following the grant. Third, if the conveyance is silent as to the scope of the easement, extrin-

sic evidence is inadmissible as to the scope or extent of the easement. However, in this latter situation, a reasonable use is implied.

*Beechridge Dev. Co., LLC v. Dahners,* 132 N.C.App. 181, 183, 511 S.E.2d 18 (1999) rev'd on other grounds, 350 N.C. 583, 516 S.E.2d 592 (1999). Thus, absent ambiguity, the terms of the writing creating the easement alone control easement interpretation.

On the other hand, as one factor in determining whether the local action doctrine should apply, a court should consider whether a judgment would affect title to land. Under North Carolina law, "an easement is an interest in land" and "every right to land is a title." *Shingleton v. State,* 260 N.C. at 459, 133 S.E.2d 183. As a result, a dispute over the scope of an easement creates "adverse claims of title to land." *Id.*

The parties ultimately agree that an easement is an interest in land and that, in both North Carolina and Virginia, easement interpretation proceeds according to contract construction principles. The Defendants contend, however, that easement interpretation so directly affects title that it renders an action local in nature. Although the Defendants are correct that a dispute over easement scope is akin to title dispute, the decision to be made here only requires the Court to interpret the easement grants in order to determine the respective rights of the parties. And, the decision does not implicate purely local evidence or activity.

### E. Summary

In sum, the character of an action depends on the relationship between the parties giving rise to the dispute, on the principal aspect of the asserted claims, and, to a lesser extent, on the determinations a court is required to make in rendering judgment. The meaning of the easement grants at issue here are in the vernacular of *Ellenwood,* the "principal theory," and those grants set forth the entire relationship between the present parties, and, to the extent the easement grants are ambiguous, construction of those grants will not require any inquiry within the peculiar ambit of a court at the situs. Rather, under both North Carolina and Virginia law, and as supported by the two Restatements, determining easement scope is a matter of applying contract construction principles. Although it is true that, to the extent ambiguity remains after contract principles are exhausted, a court is directed to look at the circumstances surrounding the land and easement creation, the parties have not provided any basis for concluding that any such inquiry would add to the analysis of the easement grants at issue here.

For the foregoing reasons, at least where, as here, a plaintiff's trespass claim is entirely dependant on the proper construction of the language contained in a grant of easement, and the grant sets forth the entire relationship between the parties, the contract is the principal thing at issue and the action calling for a declaration of the rights of the parties thereunder is properly characterized as transitory.

### IV. The Local Action Doctrine: Venue or Jurisdiction

■ It is preferable not to articulate alternative grounds of decision. *Karsten v. Kaiser Found. Health Plan of Mid–Atlantic States, Inc.,* 36 F.3d 8, 11 (4th Cir.1994). If the decision that this action is transitory is in error, however, it is necessary to assess the argument that the local action doctrine is a rule of venue, not jurisdiction. That assessment implicates the Plaintiffs' motion for leave to amend their complaint.

Whether the local action doctrine goes to the venue or jurisdiction of a court is an unsettled question.

> Venue concerns the appropriate district court in which an action may be filed. Venue statutes generally are concerned with convenience. They seek to channel lawsuits to an appropriately convenient court, given the matters raised and the parties involved in an action. Thus venue principles must be contrasted with personal jurisdiction principles and subject matter jurisdiction principles . . . venue rules do not implicate the court's power either to bind the litigants before it, as personal jurisdiction rules do; or to decide a particular type of case, as subject matter jurisdiction rules do. Thus, no constitutional rights are implicated by the venue statutes, and accordingly, any rights conferred by the federal venue statutes are waivable. ·

17 Moore's § 110.01[1].

The issue is of import in this action because Defendants oppose the plaintiffs's Motion For Leave To Amend by asserting that a court lacking subject matter jurisdiction over an action is also without jurisdiction to grant leave to amend the complaint even if the amendment would cure the jurisdictional defect. If the local action doctrine is a matter of venue, that argument is, of course, moot.

Federal venue statutes address certain local actions as a matter of federal law. Title 28, Section 1392 of the United States Code provides that "[a]ny civil action, of a local nature, involving property located in different districts in the same State, may be brought in any of such districts." 28 U.S.C. § 1392 (2002). This provision was introduced in 1358 and has remained virtually unchanged. Unfortunately, the federal code does not explain when an action is "of a local nature," but the clear implication of Section 1392 is that, at least where the alternate fora are in the same state,

the characterization of an action as local or transitory is a matter of venue. Whether it is also a matter of venue when the alternate fora are in separate states is a separate question.

It is beyond question that Chief Justice Marshall wrote only of "jurisdiction" in *Livingston's* discussion of the local action doctrine. 15 F. Cas. at 663–65. It is also unquestionable that when *Livingston* was decided, in 1811, the distinction between jurisdiction and venue in federal law was not clearly understood. 15 Federal Prac. & Proc. § 3822 n. 21 ("It was not until 1923 that the Supreme Court, after a period of confusing deviation, firmly reestablished the distinction that venue defects are waivable."). And, "[n]ot until 1887 were there any significant venue requirements for civil actions in the federal courts." *Wheatley*, 228 F.Supp. 439, 440 (W.D.N.C.1964). At least with respect to the local action doctrine, the confusion appears to have lasted well into the twentieth century. *See Lamp* 41 F.Supp. at 685 ("At first I thought the question of whether the jurisdiction existed as to the proper venue, by reason of the local character of the action, was a serious objection to the maintenance of this suit. It is a very technical proposition of venue jurisdiction in the federal courts that an action such as one of quare clausum fregit . . . may not be maintained with respect to land not within the territorial jurisdiction of the Court."). Hence, *Livingston* and other early cases are of little precedential value in analyzing this particular question.

In *Ellenwood*, the Supreme Court of the United States treated the matter as one of jurisdiction, holding that a circuit court of the United States sitting in Ohio had no "jurisdiction" over a cause of action that was local to West Virginia. *Ellenwood*, 158 U.S. 105, 108, 15 S.Ct. 771, 39 L.Ed. 913 (1895). Like *Livingston*, the date of

the *Ellenwood* decision may detract from its precedential value on this score because *Ellenwood* too was decided before the distinction between venue and jurisdiction was as it is today.

The Plaintiffs are correct that the Fourth Circuit noted the venue/jurisdiction quandary in *Humble Oil* without "directly" ruling on the issue, 398 F.2d at 367 n. 5, but, as Defendants points out, the court in *Humble Oil* decided the case on an issue of jurisdiction throughout its analysis finding, for example, that "the rule limit[s] a court's *jurisdiction* over real property in another state," that Texas federal and state courts had *"exclusive jurisdiction* over actions to determine title to realty within Texas," and that a decision in the District of South Carolina purporting to affect title in Texas would not be *res judicata* in a Texas court. *Id.* at 367 (emphasis added). This proves little, however, because it appears that the court discussed the question as one of jurisdiction only because it merged the local action doctrine analysis with the *Fall–Clarke* rule that a court in one forum state (F1) has no jurisdiction to issue a judgment directly disposing of property located entirely in a separate forum state (F2). Absent the issue of extraterritorial enforcement of judgments, the interests of F2 in determining rights with respect to land within its borders, such as where the F1 court's ruling would ultimately, but not directly, affect real property in F2, is at most a matter of convenience, and therefore venue

This Court is not bound to find that the doctrine is jurisdictional because no

Fourth Circuit or Supreme Court opinion has so held.[15]

The *Hallaba* decision provides several persuasive reasons why the better view is that the local action doctrine is a question of venue in the federal courts. *Hallaba*, 196 F.R.D. at 647–50; *see also Musicus*, 743 F.2d at 505–06 (treating the local action doctrine as venue issue, but without explanation); 17 Moore's § 110.20[5]; 15 Fed. Prac. & Proc. § 3822 nn. 18–21 and associated text; Local Action Note, *supra* at 713.

First, general federal subject matter jurisdiction must be the same across all district courts. Thus, if a local district court has subject matter jurisdiction to decide an action, a non-local court must have subject matter jurisdiction over the action as well. *Hallaba*, 196 F.R.D. at 648 (citing 17 Moore's § 110.20[5] ). Second, when a court has no question of its power to effectuate a judgment or bind the parties before it, but the action nevertheless involves uniquely local evidence or activity or determinations particularly suited to a local court, the local action doctrine is more attuned with venue, *i.e.*, finding a convenient forum for the parties, and witnesses. *Id.* (same). When the nature of the dispute implicates a court's power to enforce its judgment, however, the issue is more appropriately addressed under the jurisdictional rules of *Fall* and *Clarke*, *Humble Oil*, 398 F.2d at 367–68 & nn. 5–7, and " 'to the extent that the local action rule parallels the distinction between *in rem* and *in personam* jurisdiction, it too should be treated at most as a personal

---

**15.** District court decisions within the Fourth Circuit is likewise equivocal. *See, e.g., Wheatley*, 228 F.Supp. at 440–41 (W.D.N.C.1964) (noting that the "distinction between jurisdiction and venue ... cannot be overemphasized," but failing to resolve the issue, and implicitly treating the question as one of venue); *Big Robin Farms*, 161 F.Supp. 646, 650

(W.D.S.C.1958) (apparently treating doctrine as a question of venue where land was located in another district within the same state); *Potomac Milling*, 217 F. at 666 (in 1914, treating the doctrine as a "question as to whether this court has jurisdiction to entertain the suit").

jurisdiction defect, which, like venue objections, is waivable ....'" *Hallaba,* 196 F.R.D. at 648 (quoting 17 Moore's § 110.20[5]). Third, local actions are mentioned in the federal venue statutes, but are conspicuously absent from the statutes governing subject matter jurisdiction, reflecting Congressional intent that courts address local actions through venue laws. *Id.* at 648–49.

Finally, cases finding that the local action doctrine is a rule of subject matter jurisdiction provide no persuasive reasons for that conclusion and a number of such cases were decided when the distinction between jurisdiction and venue was not clearly understood. *Id.* 649–50. The arguments in favor of treating the local action doctrine as a matter of venue are many, timely, and moving. Therefore, at least in actions such as this, the local action doctrine addresses the proper venue in the federal courts. Hence, even if this action were to be characterized as local, the court would have jurisdiction to transfer it to another venue and to permit amendment of the complaint.

## V. Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss is denied and the plaintiffs's Motion for Leave to Amend is granted.

It is so ORDERED.