**Richard KINGSBOROUGH, et al., Plaintiffs,**

v.

**SPRINT COMMUNICATIONS CO., L.P., et al., Defendants.**

**Civil Action No. 07–10651–LTS.**

United States District Court, D. Massachusetts.

Dec. 9, 2009.

Nels Ackerson, Katheleen Kauffman, Ackerson & Kauffman Fex, P.C, Washington, DC, Lauren M. Burke, Timothy J. Perry, Perry, Krumsiek & Jack LLP, David Pastor, Gilman and Pastor, LLP, Boston, MA, John F. Daum, O'Melveny & Myers LLP, Los Angeles, CA, David A. Futscher, Parry Deering Futscher & Sparks, P.S.C., Covington, KY, Scott Gilchrist, Cohen & Malad, LLP, Indianapolis, IN, Robert E. Margulies, Margulies Wind, P.A., Jersey City, NJ, Daniel J. Millea, Zelle Hofmann Voelbel Mason & Gette LLP, Minneapolis, MN, for Plaintiffs.

David J. Andrews, Hare & Chaffin, Boston, MA, Douglas Dalgleish, J. Emmett Logan, Stinson Morrison Hecker LLP, Lathrop & Gage L.C., Kansas City, MO, Richard A. Davidson, Jr., Richard A. Davidson, Attorney at Law, Bedford, MA, Joseph E. Jones, Fraser Stryker PC, Omaha, NE, for Plaintiffs/Consolidated Plaintiffs/Consolidated Defendants.

Catherine M. Colinvaux, Zelle Hofmann Voelbel & Gette LLP, Waltham, MA, William T. Gotfryd, Susman Heffner & Hurst, Chicago, IL, Irwin B. Levin, Cohen & Malad LLP, Indianapolis, IN, Brad P. Miller, Hawley Troxell Ennis & Hawley, Boise, ID, Ron R. Parry, Parry Deering Futscher & Sparks, P.S.C., Covington, KY, for Plaintiffs/Consolidated Plaintiffs.

Jennifer S. Bernstein, Bernstein & Yang, LLP, Boston, MA, for Defendants/Consolidated Defendants.

Emily J. Brubaker, Corr Cronin Michelson Baumgardner & Preece LLP, Seattle, WA, for Consolidated Defendants.

David B. Chaffin, White and Williams LLP, Boston, MA, for Claimant/Consolidated Defendant.

Andrew W. Cohen, Koonz, McKenney, Johnson, DePaolis & Lighfoot, LLP, Washington, DC, for Plaintiff/Defendant/Consolidated Defendants.

Nathan L. Kaitz, Morgan, Brown & Joy, LLP, Boston, MA, for Plaintiff/Consolidated Defendants.

David T. Powell, Lathrop & Gage LC, Kansas City, MO, for Claimant.

*REVISED MEMORANDUM AND OR-
DER ON JOINT MOTION FOR FI-
NAL APPROVAL OF CLASS–AC-
TION SETTLEMENTS*

SOROKIN, United States Magistrate Judge.

[Take note that this Revised Memorandum and Order replaces the Memorandum and Order issued by the Court on September 10, 2009.]

This putative nationwide class-action arises out of the installation of fiber-optic cable on railroad rights-of-way by three of the nation's largest telecommunications companies. The plaintiffs are landowners in forty-six states who have asserted trespass, unjust enrichment, and related claims against the defendants for conduct that began over twenty years ago. After over a decade of litigation in numerous courts, the parties have jointly moved for final approval of forty-nine class action settlements.

On July 18, 2008, the court preliminarily certified forty-eight settlement classes and issued its preliminary approval to the corresponding proposed forty-nine settlement agreements.[1] In addition, the parties have submitted for approval a Common Administration Agreement providing for the common administration of all of the settlements, the coordination of notice and claims processing, and an aggregate attorneys' fee award. On October 27, 2008, the parties filed a motion seeking final approval of the settlements, permanent certification of the classes, and entry of final judgment.

The court held a Fairness Hearing on November 17, 2008. Several individuals and entities objected to the proposed settlements, and were represented at the hearing by counsel. In addition, the court received numerous objection letters from individuals. After careful consideration of the parties' briefs, the evidence presented at the Fairness Hearing, the objections, and the full record of the case, the court will *DENY* the motion for final approval of the proposed settlement agreements as moot and *DISMISS* this matter for lack of subject matter jurisdiction.

*BACKGROUND*

The procedural history of this litigation is lengthy and complex. Beginning in the mid–1980's, the defendants undertook the installation of fiber-optic cable systems in railroad rights-of-way. The installations were done pursuant to agreements executed by the defendants and the railroads possessing the rights-of-way, without the consent and/or knowledge of the landowners on whose property the cable systems were installed. In the 1990's, numerous landowners filed settlement agreement and sets forth terms and conditions common to each state. suit against the defendants in state and federal courts across the country.[2] In the fall of 2001, several plaintiffs and the defendants reached a nationwide settlement that covered all of the claims at issue in this litigation. The settlement was submitted to Judge Wayne R.

---

1. The forty-eight separate proposed classes consist of one (sub)class for each of forty-six states (Louisiana, Tennessee, Alaska, and Hawaii are not represented in the settlement), and two Land Grant classes (which are comprised of those landowners holding property subject to federal land grants). There is one proposed settlement agreement for each of the 48 proposed classes, as well as one Master

State Class Agreement, which is incorporated into each separate state

2. Settlement Class Counsel report that the presently proposed settlements resolve forty four pending lawsuits and release the parties involved in thirty-five lawsuits. See docket numbers 41 and 106–3. None of these cases are pending in this district.

Andersen of the United States District Court for the Northern District of Illinois. During a five-month period from fall of 2001 into early 2002, counsel appeared before Judge Andersen for numerous conferences related to the settlement. Judge Andersen appointed a Special Master to handle the settlement approval process, and set a hearing for a date in March of 2002. However, prior to the hearing, some of the parties wrote a letter to Judge Andersen informing him that they were withdrawing the proposed settlement from his consideration. Shortly thereafter, those parties headed west and moved for approval of the settlement in the District of Oregon. The move was to no avail; the Oregon Court dismissed the amended complaint as a sanction for "clear evidence of judge-shopping by the settling parties." *Zografos v. Qwest Comm. Corp.*, 225 F.Supp.2d 1217, 1223 (D.Or.2002). The Court ruled that

> [t]he fact that the settling parties grew increasingly unhappy with Judge Anders[e]n as he expressed concern about giving quick approval to a proposed settlement with so many objecting intervenors, supports the finding that the settling parties wanted to find a new jurisdiction where the court, perhaps, would not share Judge Anders[e]n's concern.... The settling parties' action of abruptly removing themselves from the Chicago District Court's jurisdiction to start anew in Portland will not be sanctioned by this court.

*Id.* at 1223–1224. The parties returned to Chicago, where they appeared before Judge Andersen once more, seeking approval of a revised proposed settlement. Judge Andersen preliminarily approved a settlement agreement and enjoined all related right-of-way cases nationwide. A group of intervenors appealed.

The United States Court of Appeals for the Seventh Circuit reversed Judge Andersen's preliminary approval, ruling that because a nationwide class "has not been and cannot be certified for trial," the class plaintiffs entered into settlement discussions in a "disarmed" state, unable to use the threat of litigation as leverage in further negotiations. *Smith v. Sprint Comms. Co., L.P.*, 387 F.3d 612, 614 (7th Cir.2004)(quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 621, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)). The Seventh Circuit additionally held that the plaintiffs' interests were not adequately protected due to an absence of proper class representatives. *Smith*, 387 F.3d at 614.[3] Following the Seventh Circuit's decision, settlement discussions resumed under the guidance of the Special Master that had been appointed by Judge Andersen. In 2005, after this process was unsuccessful in producing final agreements, the named plaintiff moved to dismiss all non-Illinois plaintiffs and sought certification of a state-wide class of landowners against only one of the defendants (Sprint).

In March of 2006, the parties to the instant litigation retained Professor Eric Green in Boston to mediate further settle-

---

**3.** It is clear that the Seventh Circuit, like the Oregon court, was not pleased with the traveling lawsuit. It stated, "After a half a dozen hearings in Chicago, engaging the time of a district judge, a magistrate judge, and a Special Master, the settling parties, apparently not pleased with how things were going in the Windy City because the court seemed to be disinclined to approve the settlement, migrat-ed to the United States district court in Oregon and submitted it there for preliminary approval .... in a decision that hit the nail squarely on the head, [the Oregon court] dismissed the case on the grounds of 'judge shopping.' The settling parties then returned to Chicago for another stab at making their deal stick." *Smith*, 387 F.3d at 613–614 (internal citation omitted).

ment discussions.[4] Just over one year later, in March of 2007, the plaintiffs filed the Master Complaint in this Court. On July 2, 2008, after additional issues arose and were resolved with the assistance of Professor Green, the plaintiffs filed a Second Amended Class–Action Complaint, wherein they assert four causes of action: trespass (Count I); unjust enrichment (Count II); and slander of title (Count III). In addition, the plaintiffs assert a claim for injunctive relief (Count IV), seeking, *inter alia,* a declaration that the defendants have no right to use the rights-of-way, and an Order instructing the defendants to remove their telecommunications cable systems from the properties at issue.

## THE PROPOSED SETTLEMENT

As previously noted, the proposed settlement of this case involves forty-nine separate agreements.[5] Class members are to be compensated based upon the number of linear feet comprising their affected property. The amounts to be paid to class members under each Agreement vary greatly, based upon the parties' state-by-state analysis of the strengths and weaknesses of the claims and defenses at issue for each of the subclasses. Issues under consideration during negotiations included the particularities of state laws with regard to the extent of the railroads' easements, whether continuing trespass is a viable claim, statutes of limitations, and applicable measures of damages.

There are two levels of cash benefits available to class members under the proposed settlements, which depend upon the extent of the documentary proof submitted. In the simplest explanation of the payment scheme, class members may opt to seek minimum benefits, which they can obtain after providing nothing more than their deed or certificate of title. Minimum benefits run the gamut from $0.18 per foot, to $0.91 per foot, depending on the state. Class members may, in the alternative, seek full benefits, which would pay an amount ranging from $.26 per foot to $3.64 per foot, again depending on the state. Those class members seeking full benefits must prove that the source document relating to their particular property did not convey a fee interest in the right-of-way to the railroads.[6]

Under the proposed settlements, all current landowners who did not exercise their right to opt out of the relevant subclass will convey an easement to each settling defendant. Approximately 40,000 miles of easements are contemplated, related to 320,000 to 400,000 parcels of land. There are two forms of easements: one for active railroad lines, and one for abandoned railroad lines. The easements grant to the settling defendants and their successors, assigns, and licensees, a perpetual easement and right-of-way.[7] In addition, the

---

4. While the defendants to the instant litigation were also defendants in the above-mentioned cases in Illinois and Oregon, the named plaintiffs and their counsel have changed; not all proponents of the present settlement supported the settlement proposals described in the text.

5. See note 1. A state litigation class has already been certified in Tennessee, and a settlement is pending in Louisiana involving other plaintiffs. Alaska and Hawaii are excluded as they are not part of the "Lower 48." The eight right-of-way miles in the District of Co-

lumbia are dealt with in the Maryland agreement, as District of Columbia common law is based on Maryland law. *See In re A.W.K.,* 778 A.2d 314, 319 (D.C.2001).

6. There are other multipliers that may be applied to adjust the ultimate pay-outs to class members. There is no need at this juncture to discuss the multipliers in detail.

7. The easements grant to defendants the

right to place, lay, bury, construct, install, operate, repair, maintain (including aerial

settling parties seek an Order directing the Claims Administrator, under Fed. R.Civ.P. 70, to execute and convey to each settling defendant an easement on behalf of those current-landowner class members who do not personally execute and deliver the easement.[8] The Court is also requested to enter an "Easement Deed by Court Order in Settlement of Landowner Action," which the settling defendants or class counsel may record.

Finally, all class members who did not exercise their right to opt out of the settlement will release not only each settling defendant who owns telecommunications facilities in a right-of-way adjacent to the class member's property, but also all of the railroads (even though they are not parties to this litigation), and any person using the telecommunications facilities that belong to the settling defendants.

Settlement Class Counsel estimate that the gross value of the entire settlement is $188.5 million. They estimate that approximately $127 million in cash compensation is available for class members. Counsel have arrived at the $127 million figure by multiplying the number of feet of right-of-way covered by each Settlement Agreement by the maximum amount possible for each class member if they were to seek and receive the full benefits.[9] In addition, Counsel estimate the cost of administration to be $20 million. Through a separate motion, Settlement Class Counsel seek,

---

patrol), renew, rebuild, replace, upgrade, expand, relocate, and remove fiber optic cables, copper cables, coaxial cables or other cables through which voice, data, video or other signals are transmitted, conduits, inner ducts, hand holes, splice vaults, poles, optical or electronic equipment, regenerator huts, marker posts or signs, and other related facilities appropriate for installation, use, or maintenance of such cables (collectively, the "Telecommunications Cable System"), in, on, over, under, through and/or across [the property at issue].... The Easement shall not include the right to construct regenerator huts and similar structures ("Buildings") in addition to those existing on [date of preliminary approval of the settlement]. The Easement shall include the right to repair, replace, or expand existing Buildings, provided, however, that no such repair, replacement, or expansion shall increase the site that the Buildings occupy, or the height of any Building, by more than twenty-five percent (25%). The Easement does not permit the construction of microwave towers, cell towers, or other components of a primarily aboveground statewide Telecommunications Cable System.

8. Rule 70 provides:
(a) Party's Failure to Act; Ordering Another to Act. If a judgment requires a party to convey land, to deliver a deed or other document, or to perform any other specific act and the party fails to comply within the time specified, the court may order the act to be done—at the disobedient party's expense—by another person appointed by the court. When done, the act has the same effect as if done by the party.
(b) Vesting Title. If the real or personal property is within the district, the court—instead of ordering a conveyance—may enter a judgment divesting any party's title and vesting it in others. That judgment has the effect of a legally executed conveyance.
(c) Obtaining a Writ of Attachment or Sequestration. On application by a party entitled to performance of an act, the clerk must issue a writ of attachment or sequestration against the disobedient party's property to compel obedience.
(d) Obtaining a Writ of Execution or Assistance. On application by a party who obtains a judgment or order for possession, the clerk must issue a writ of execution or assistance.
(e) Holding in Contempt. The court may also hold the disobedient party in contempt.

9. Each settling defendant will make an initial payment of $50,000 into the Settlement Fund, to cover claim pay-outs. They will make additional payments on an as-needed basis, as determined by the Claims Administrator. Any monies in the Settlement Fund not paid out to class members will revert to the settling defendants.

and the settling defendants do not object to, an award of attorneys' fees and expenses in the amount of $41.5 million.[10]

### DISCUSSION

#### 1. *Jurisdictional Issues*

##### A. *Consent to a Magistrate Judge*

At the outset, the Court must address the contention of Objector Lakeside, MHC, Ltd., ("Lakeside"), that plaintiffs' counsel lacked the authority to consent to the jurisdiction of this Magistrate Judge on behalf of unnamed class members. On July 25, 2007, counsel, on behalf of all parties, consented to the exercise of jurisdiction by the undersigned Magistrate Judge. *See* Docket # 32. On July 17, 2008, the parties filed a supplemental form, again consenting to the exercise of jurisdiction by the undersigned Magistrate Judge. *See* Docket # 54. All parties joined in this filing, including all of the named plaintiffs/proposed class representatives. The filing was made in conjunction with the parties' request for preliminary approval of the settlement.

■ Lakeside's contention that the consent is invalid lacks merit. Unnamed class members are bound by the named class members' consent to jurisdiction under 28 U.S.C. § 636(c). *See Williams v. General Elec. Capital Auto Lease, Inc.*, 159 F.3d 266, 269 (7th Cir.1998) (where named plaintiffs consent to proceed before a magistrate judge prior to certification of the class, the unnamed class members were bound by the consent). *See also Arnold v. Arizona Dept. of Pub. Safety*, 233 F.R.D. 537, 540 (D.Ariz.2005) ("[T]he *named* parties' voluntary consent is the linchpin to

magistrate judge jurisdiction under the Constitution.") (emphasis added); *Cappetta v. GC Servs. Ltd. P'ship*, 2009 WL 482474 at *4 (E.D.Va. Feb. 24, 2009) (same).

■ Finally, Lakeside claims "party status" under *Devlin v. Scardelletti*, 536 U.S. 1, 122 S.Ct. 2005, 153 L.Ed.2d 27 (2002). In *Devlin*, the Supreme Court held that unnamed class members "who have objected in a timely manner to approval of the settlement at the fairness hearing have the power to bring an appeal without first intervening." *Id.* at 14. However, the Court's decision in *Devlin* does not establish Lakeside as a "party" for purposes of § 636(c), and Lakeside presents no developed argument suggesting otherwise. To the contrary, the Supreme Court made clear that "considering nonnamed class members parties for the purposes of bringing an appeal [does not] conflict with any other aspect of class action procedure." *Id.* at 9. The Court is therefore satisfied that the consent given in this matter is sufficient to bind all class members, named and unnamed alike.

##### B. *Subject Matter Jurisdiction*

The issue of whether the Court can exercise jurisdiction over trespass-based claims regarding parcels of land located outside of Massachusetts is raised by several of the Objectors and must be addressed before the Court considers the merits of the proposed settlement. *See Prou v. United States*, 199 F.3d 37, 45 (1st Cir.1999) ("[T]he question of subject-matter jurisdiction is always open: courts at every stage of the proceedings are obligated to consider the issue . . .").

---

**10.** The settling defendants have agreed to pay the administration costs, as well as attorneys' fees and costs, separately from the $127 million Settlement Fund so that cash benefits available to any class member will not be reduced. Each settling defendant is obligated to pay only its *pro rata* portion of any fee and expense award, based on the number of linear feet right-of-way for which it is responsible under the Settlements.

■ Lakeside argues that the court lacks jurisdiction by virtue of the "local action doctrine." The doctrine was announced in federal jurisprudence in *Livingston v. Jefferson*, 15 F. Cas. 660 (C.C.D.Va.1811). In that case, Thomas Jefferson was sued in a federal court in Virginia for an alleged trespass to land located in Louisiana. The Court dismissed the matter, finding that the trespass was local to Louisiana and could not be brought in a Virginia court. *Id.* at 665. The Supreme Court later reiterated this reasoning in *Ellenwood v. Marietta Chair Co.*, 158 U.S. 105, 15 S.Ct. 771, 39 L.Ed. 913 (1895), wherein it held that "an action for trespass upon land, like an action to recover the title or the possession of the land itself, is a local action, and can only be brought within the state in which the land lies." *Id.* at 107, 15 S.Ct. 771. The Supreme Court found that the federal court in Ohio "had no jurisdiction of the cause of action" alleging a trespass upon land in West Virginia. *Id.* at 108, 15 S.Ct. 771.

In determining whether the doctrine applies, Chief Justice Marshall stated that "[t]he distinction taken is, that actions are deemed transitory, where transactions on which they are founded, might have taken place anywhere; but are local where their cause is in its nature necessarily local." *Livingston*, 15 F. Cas. at 664. The Supreme Court subsequently described the distinction as akin to the difference between *in personam* and *in rem* jurisdiction. *See Casey v. Adams*, 102 U.S. 66, 68,

26 L.Ed. 52 (1880) (ruling that "[l]ocal actions are in the nature of suits *in rem,* and are to be prosecuted where the thing on which they are founded is situated.").

Modern federal courts have consistently read *Livingston* to mean that "an action for trespass to land, although an *in personam* action seeking monetary relief, was nevertheless local in nature." *Hayes v. Gulf Oil Corp.*, 821 F.2d 285, 287 (5th Cir.1987). In a case similar to the instant matter, the District Court in Oklahoma was presented with a motion for certification of a nationwide class of landowners asserting claims-virtually identical to those presented here-against different telecommunications company defendants. The Court held that the local action doctrine applied because "the issues of trespass and land ownership ... [are] essentially local in nature." *Hallaba v. Worldcom Network Servs., Inc.*, 196 F.R.D. 630, 647 (N.D.Okla.2000). *See also Fisher v. Virginia Elec. and Power Co.*, 243 F.Supp.2d 538, 548 (E.D.Va.2003) (noting that "an action for trespass has become a tralatitious local action in American jurisprudence."); *Pasos v. Pan Amer. Airways,* 229 F.2d 271, 272 (2nd Cir.1956) (applying, albeit reluctantly, the local action rule to a trespass action).[11] In addition, a leading treatise notes that the local action doctrine "now is established firmly in federal jurisprudence and the case law makes it as clear as anything can be that this distinction exists and that local actions can be

---

11. The Second Circuit's reluctance appeared to arise from the injustice Marshall mentioned in *Livingston* which presented itself in Pasos—an injury without a remedy because the defendant was not subject to the jurisdiction of the Court having jurisdiction over the land. In 1874, Congress mitigated (though it did not eliminate) Marshall's concern by providing for nationwide service of process "[w]hen any defendant in a suit in equity to enforce any legal or equitable lien or claim against real or personal property within the district where the suit is brought is not an inhabitant of nor found within the said district, and does not voluntarily appear thereto, it shall be lawful for the court to make an order directing such absent defendant to appear ... and the said order shall be served on such absent defendant, if practicable, wherever found." Revised Statutes of United States 43 Congress § 738 (1873–1874) later version codified at 28 U.S.C. § 1655.

brought only where the property involved in the action is located." 14D Wright, Miller & Cooper, Federal Practice and Procedure, § 3822 (3d. ed. 2005 & Supp. 2009).[12]

As it has emerged over the years, the local action doctrine applies almost exclusively to claims for trespass. While courts frequently approve the issuance of *in personam* decrees affecting extraterritorial real estate in cases of a different nature, "the basis for sanctioning [such decrees] is the *relationship between the litigants* that gives rise to a transitory cause of action. The most frequent examples are contracts, mortgages, and leases." *Humble Oil & Refining Co. v. Copeland,* 398 F.2d 364, 367 (4th Cir.1968) (emphasis added). As an example, in a case on which the plaintiffs rely, the Seventh Circuit found the local action doctrine inapplicable to a matter involving a dispute over leases for several grocery stores located in different states. *See Raphael J. Musicus, Inc. v. Safeway Stores, Inc.,* 743 F.2d 503 (7th Cir.1984). In that case, the claims asserted were for breach of contract, fraud, and trespass. In rejecting the defendant's argument that the local action doctrine applied, the court found that "the *primary issue* is the respective contractual rights of the parties under the leases; *the issue of a trespass is, in fact, incidental* and depends entirely on the resolution of the lease construction issues." *Id.* at 511 n. 6 (emphases added). In a dispute over funds relating to the sale of a condominium, a court in this Circuit declined to apply the local action doctrine because its ruling would not "affect the current title to the condo-

minium nor any interest in that property." *Parsons v. United States,* 1999 WL 33117194 at *2 (D.Me. Aug. 11, 1999).[13] *See also Central Wesleyan College v. W.R. Grace & Co.,* 143 F.R.D. 628, 639 (D.S.C. 1992) (finding the local action doctrine inapplicable to a property damage claim arising from asbestos removal, which did not affect title or possession of the real estate). Another area in which courts have routinely directed a party to convey interest in extraterritorial property is in the dissolution of marriages. *See, e.g., Farley v. Farley,* 227 Cal.App.2d 1, 38 Cal.Rptr. 357 (Cal.App. 3 Dist.1964).

█ The instant matter is distinguishable from the above cases because it is primarily a trespass matter (as opposed to a contract or divorce), which, as precedent amply demonstrates, is inherently—and uniquely—local in nature. The Court in *Hallaba,* a lawsuit sharing many similarities with the claims in this case, put it well:

The issues of trespass and land ownership are at the heart of all of [Plaintiffs'] claims, rendering them essentially local in nature.... Plaintiff's primary claim is one for trespass—that is, a claim that Defendants installed fiber-optic cable on his land without his permission. The other claims also derive from the alleged unlawful use of the land. In all three claims, the parties' ownership interests in the land are essential elements. If Defendants have not unlawfully used Plaintiff's land, none of Plaintiff's claims will stand. The potential for dispute over land ownership is a major reason that courts have characterized trespass

---

**12.** Nonetheless, over the years, the doctrine has generated criticism. *See Reasor–Hill Corp. v. Harrison,* 220 Ark. 521, 249 S.W.2d 994 (1952); Wright, Miller & Cooper, *supra,* at § 3822 ("The rule has come under significant criticism over the years.").

**13.** The court in *Parsons* noted that the First Circuit has not adopted the local action doctrine. The parties do not point to any cases in which the First Circuit has repudiated or addressed the doctrine and, in any event, this court is of course bound by Supreme Court precedent.

actions as local, and Plaintiff's claims hinge on the dispute over land ownership. Thus, they are essentially local in nature.

*Hallaba,* 196 F.R.D. at 647 (internal citation omitted). As in *Hallaba,* the trespass claims presented in this case comprise the core of this litigation.[14] There are no contract claims at issue here: the plaintiffs accuse the defendants of trespass, unjust enrichment, and slander of title. They also seek an Order instructing the defendants to remove their cables from the affected properties. The heart of the claims presented requires a determination as to title and land ownership. The case affects the property rights of thousands—if not hundreds of thousands—individual landowners across the United States. Moreover, it is not only the claims raised in the plaintiffs' litigation posture that require resolution of title and land ownership issues. As evidenced by the parties' need to have separate agreements for each state, the laws relating to real property are highly localized and vary greatly from state to state. In addition, as previously noted, the two-tiered claims/benefits process is structured so that class members' eligibility for an award is dependent upon his or her ability to establish ownership over the property. The very heart of this matter sounds in trespass and concerns disputes over the ownership of the land. Therefore, the Court finds that the claims necessarily fall squarely within the local action doctrine.[15]

■ The plaintiffs contend that rather than affecting jurisdiction, the local action doctrine is instead more akin to a rule of venue that may be (and has been) waived by the parties. In a leading case many years ago the Supreme Court described the distinction between venue and jurisdiction:

> The jurisdiction of the federal courts—their power to adjudicate—is a grant of authority to them by Congress and thus beyond the scope of litigants to confer. But the locality of a law suit—the place where judicial authority may be exercised—though defined by legislation relates to the convenience of litigants and as such is subject to their disposition. This basic difference between the court's power and the litigant's convenience is historic in the federal courts.

*Neirbo Co. v. Bethlehem Shipbuilding Corp.,* 308 U.S. 165, 167–168, 60 S.Ct. 153, 84 L.Ed. 167 (1939) (Frankfurter, J.).

14. The plaintiffs heavily rely upon *Fisher, supra,* 243 F.Supp.2d 538, to contend that their suit is not local. However, *Fisher* presented materially different claims and facts, and highlighted the difference between it and *Hallaba* by stating that the "railroad rights of way at issue in *Hallaba* are not legally, or analytically, equivalent to the easements [granted by plaintiffs or their predecessors in interest] on which [the *Fisher*] action turns." *Fisher,* 243 F.Supp.2d at 552. Moreover, in contrast to this case and to *Hallaba,* in which a central question is whether "the deeds purporting to grant a 'right of way' were instead creating a fee," the defendants in *Fisher* made "no challenge to the Plaintiffs's title." *Id.* Notably, the *Fisher* Court commented that the *Hallaba* Court's determination was "quite logical and persuasive on its facts." *Fisher,* 243 F.Supp.2d at 552.

15. Whether federal or state law supplies the rule of decision for determining if a matter is local or transitory in nature is a subsidiary issue. The court applies federal law to make this determination following the persuasive decisions of many other federal courts. *See Hayes,* 821 F.2d at 287–288; *Fisher,* 243 F.Supp.2d at 541 n. 3. The court notes that neither the parties nor any objector has suggested that state law applies. In any event, the distinction is of little import, as Massachusetts law is in accord with federal law on this point. *See Allin v. Connecticut River Lumber Co.,* 150 Mass. 560, 562, 23 N.E. 581 (1890) (an action for trespass "has always been treated as a local action.").

Both Chief Justice Marshall riding circuit and the Supreme Court have specifically found the doctrine to impart a limitation on a court's "jurisdiction." *Livingston,* 15 F. Cas. at 664; *Ellenwood,* 158 U.S. at 108, 15 S.Ct. 771. No party has pointed to a subsequent decision of the Supreme Court overturning this classification. Many years later, after ruling that the local action doctrine applied to an action to recover damages for trespass to land located in Nicaragua, the Second Circuit dismissed a case for lack of jurisdiction. *See Pasos,* 229 F.2d 271. The Court explained the statutory basis for the doctrine:

> At common law, such a "local" action could not be maintained in any jurisdiction except that in which the land was located; see *Ellenwood v. Mariette [Marietta] Chair Co.,* 158 U.S. 105, 107, 15 S.Ct. 771, 39 L.Ed. 913. In *Livingston v. Jefferson,* 1811, 15 Fed.Cas. page 660, No. 8,411, Marshall, sitting at the Circuit, held that, as a consequence, a federal court had no jurisdiction of such a suit, since Section 11 of the Judicial Code of 1789, 1 Stat. 78, defined the subject matter of the jurisdiction in diversity cases as "suits of a civil nature at common law or in equity." In the revision of 1948, Section 1332 of 28 U.S.C. changed this language to "all civil actions." But the Reviser's Note shows that Congress did not intend, by this verbal change, to enlarge federal jurisdiction.

*Id.*[16]

Many other modern courts—at both the Circuit and District levels—have concluded or implied that the doctrine works to limit a court's jurisdiction. *See United States v. Byrne,* 291 F.3d 1056, 1060 (9th Cir.2002),

cert. denied, 537 U.S. 1088, 123 S.Ct. 700, 154 L.Ed.2d 633 ("The federal district courts' jurisdiction over actions concerning real property is generally coterminous with the states' political boundaries."); *Bigio v. Coca-Cola Co.,* 239 F.3d 440, 449–450 (2d Cir.2000) ("Under the local action doctrine, courts may not exercise jurisdiction over any 'local' action involving real property unless the property at issue is found within the territorial boundaries of the state where the court is sitting."); *In re School Asbestos Litig.,* 921 F.2d 1310, 1318–1319 (3rd Cir.1990) (finding that as the local action rule does not apply, the court has subject matter jurisdiction); *Hayes v. Gulf Oil Corp.,* 821 F.2d at 291 ("The assertion that an action is local raises more than the court's venue."); *Van Beek v. Ninkov,* 265 F.Supp.2d 1037, 1043 n. 1 (N.D.Iowa 2003) (dismissing action seeking decree conveying property for lack of jurisdiction under local action doctrine); *Plant Sys., Inc. v. TE Prods. Pipeline Co.,* 2001 WL 1175091 at *1 (N.D.Ill. Oct. 3, 2001) (Explaining that if the local action doctrine applies, "it works to deprive a federal court ... of both venue and subject matter jurisdiction over the action."); *Gen. Elec. Capital Corp. v. East Coast Yacht Sales Inc.,* 757 F.Supp. 19, 20 (E.D.Pa.1991) ("[I]t is clear that the local action rule speaks to both venue and subject matter jurisdiction, as opposed only to venue."); *Kavouras v. Fernandez,* 737 F.Supp. 477, 478 (N.D.Ill.1989) ("[F]ederal jurisdiction over local actions involving real property exists *only* within the territorial boundaries of the state where the land is located.") (emphasis in the original).

The court recognizes that the case law is not uniform on this issue. Leading commentators have suggested that "at least

---

**16.** The Second Circuit applied the local action doctrine reluctantly, finding that although the application could cause "severe hardship," the court was bound to follow precedent and "may not" discard the doctrine. *Id.* at 272.

the early cases holding the defect non-waivable can be explained because they came down during a period when the distinction between jurisdiction and venue was not understood clearly." 14D Wright, Miller, & Cooper, *supra,* § 3822. The Fifth Circuit's decision in *Trust Co. Bank v. U.S. Gypsum Co.,* 950 F.2d 1144, 1149 n. 7 (5th Cir.1992) noted the differing views over whether the doctrine implicates venue or jurisdiction. Other courts have found the doctrine to implicate only venue. *See Musicus,* 743 F.2d at 506 ("Proper *venue* is determined by the characterization of the action as either local or transitory …"); *Hallaba,* 196 F.R.D. at 646–48 (same); *Fisher,* 243 F.Supp.2d at 551 n. 10 (same).

Nonetheless, after careful consideration, the court determines that the doctrine impacts jurisdiction rather than venue. The Supreme Court has repeatedly recognized that exclusive *jurisdiction* over title to real property is vested in the courts of the state in which the property at issue is located. *See, e.g., Durfee v. Duke,* 375 U.S. 106, 115, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963) (noting the Court's "emphatic expressions of the doctrine that courts of one State are completely without jurisdiction directly to affect title to land in other States."); *Underwriters Nat. Assur. Co. v. North Carolina Life and Acc. and Health Ins. Guaranty Ass'n,* 455 U.S. 691, 706 n. 11, 102 S.Ct. 1357, 71 L.Ed.2d 558 (1982) (noting the "exclusive jurisdiction each State has to control the administration of real property within its borders"). *See also Asociacion de Reclamantes v. United Mexican States,* 735 F.2d 1517, 1522 (C.A.D.C.1984) (Scalia, J.) ("the local action rule … makes the locality's power exclusive and deprives other courts of jurisdiction to settle questions involving real estate."). These cases, along with *Ellenwood* and its progeny, establish that the question is one of the court's "power" to adjudicate—in other words, jurisdiction, rather than one of the parties' "convenience," or venue. *Neirbo Co.,* 308 U.S. at 168, 60 S.Ct. 153. Therefore, the court concludes that because the claims asserted in this litigation concern solely matters relating to title to land, the court does not have jurisdiction over this matter as it relates to any properties located outside of Massachusetts.[17]

## CONCLUSION

For the foregoing reasons, I conclude that the court lacks subject matter jurisdiction over this action. Therefore, the motion for final approval is *DENIED AS MOOT. See McCulloch v. Velez,* 364 F.3d 1, 5 (1st Cir.2004) (internal citations omitted) ("Accordingly, the court dismissed the case for lack of subject matter jurisdiction. Consistent with that ruling, the court denied as moot the pending motions for injunctive relief and for summary judgment."). The case is *DISMISSED* for lack of subject matter jurisdiction.

SO ORDERED.

---

17. The court is aware that another court has approved a similar settlement in another nationwide class action suit against a different telecommunications company. *See Hinshaw v. AT & T Corp.,* 1998 WL 1799019 at *1 (Ind.Super. Aug. 24, 1998). The court understands that the *AT & T* settlement has a similar provision for recording easements by judgment of the court, as is proposed in this case. However, there is no indication that the court conducted an independent analysis of its jurisdiction. Nor did any person or entity object to the proposed settlement. In this case, at least one party objected, based upon the local action doctrine, to the court's assertion of jurisdiction.